[No. A082687. First Dist., Div. Three. Apr. 25, 2000.]

In re the Marriage of SANDRA EBEN-KING and THOMAS L. KING.
SANDRA EBEN-KING, Appellant, v.
THOMAS L. KING, Respondent.

**COUNSEL**

Kay McKenzie for Appellant.

Greene & Mayer, C. Clay Greene; Russell & Russell and Lance A. Russell for Respondent.

**OPINION**

**McGUINESS, P. J.**—In this appeal we address what is apparently an issue of first impression: do the provisions of Family Code section 2120 et seq.,

for setting aside a dissolution judgment on grounds of mistake, fraud or duress have any effect on the time for filing a notice of appeal from the underlying dissolution judgment? Despite the fact appellant Sandra Eben-King never filed a timely notice of appeal from the stipulated judgment of dissolution entered upon the motion of her former spouse, respondent Thomas L. King, she now purports to appeal *both* from an order denying her motion to set aside filed pursuant to Code of Civil Procedure section 473,[1] *and* from the underlying stipulated judgment of dissolution itself. In doing so, she places principal reliance on the Family Code provisions extending the time within which a spouse may seek equitable relief from a dissolution judgment. We conclude that most of the contentions appellant now raises for the first time on this appeal are jurisdictionally barred by her failure either (a) to raise those issues in her section 473 motion to set aside, or (b) to file a timely notice of appeal from the underlying stipulated judgment of dissolution after its entry upon respondent's motion. Because appellant's remaining contentions are without merit, we affirm the trial court's order denying her motion to set aside the judgment.

## Factual and Procedural Background

The parties were married on June 25, 1989. Appellant and respondent were both insurance brokers. For most of the marriage, they were partners in operating their own insurance business. There were no children born to the marriage.

In June 1991, they purchased a home at 10 Toyon Court in Sausalito. Initially, the parties applied for a joint loan to purchase the residence. Due to respondent's prior bankruptcy and credit history, however, the parties failed to qualify for a joint loan. As part of the original purchase, therefore, respondent quitclaimed his community interest in the residence to appellant as her sole and separate property. By handwritten memorandum dated January 8, 1993, appellant subsequently transmuted the residence to the community.[2]

---

[1]Unless otherwise indicated, all further statutory references are to the Code of Civil Procedure.

[2]Appellant's handwritten memorandum was as follows: "I, Sandra Eben-King, being of sound mind, do acknowledge that the property, located at 10 Toyon Court, Sausalito, California is community property and was only titled as my sole and separate property due to my husband, Thomas L. King's financial history. [¶] At my death this property shall be treated as such. [/s/] Sandra Eben-King 1/8/93."

After just over six years of marriage, the parties separated on July 15, 1995.[3] Appellant remained in the family residence. On August 10, 1995, appellant petitioned for dissolution. The petition was filed on appellant's behalf by her attorney, Stephen B. Ruben. Respondent filed a responsive request for dissolution on December 20, 1995. Sometime thereafter, appellant began representing herself in propria persona.

On November 1, 1996, respondent's attorney sent a letter to appellant discussing exchange of documents, competing claims, and possible avenues for settlement. Among other things, respondent's attorney claimed the residential property at 10 Toyon in Sausalito "is clearly community property . . . amenable to a sale or a buyout"; stated his understanding that both parties "had some business receivables . . . on business activity completed during the marital period, but for which commissions may not have been paid until after the date of separation"; requested "a full accounting of all income received" after separation "resulting from business written during the marital period"; and stated he would provide appellant "with a similar accounting" from respondent.

On December 19, 1996, appellant filed a request in propria persona for an award of spousal support of $2,000 per month and $5,000 in attorney fees. In her supporting declaration, she described herself as an insurance broker who had "made an excellent living in the past," but who was "experiencing difficulty in resuming the same income level" due to disability and severe depression arising from a diagnosis of breast cancer and subsequent treatment, and whose financial situation was unexpectedly "quite desperate." According to appellant's income and expense declaration, her net monthly disposable income was $2,648.92, and her total monthly expenses were $5,957. Appellant's estimate of respondent's gross monthly income was $12,000. In opposition, on January 15, 1997, respondent filed an income and expense declaration claiming his net monthly disposable income for the previous 12 months was "–$191.50," and his total monthly expenses were $3,781. Appellant's motion for spousal support and attorney fees was heard on January 23, 1997. At the hearing, respondent told the court he was unemployed. The trial court denied appellant's requests.

The mandatory bench/bar settlement conference was initially set for April 14, 1997. On March 25, 1997, the parties filed their respective bench/bar

---

[3]This is the date stated by appellant in her opening brief on appeal. Appellant did not list a date of separation on her August 10, 1995 petition for dissolution. The date July 15, 1995, also appears handwritten as the date of dissolution on respondent's response and request for dissolution, filed on December 20, 1995. On the other hand, appellant's bench/bar conference statement of March 25, 1997, lists August 10, 1995, as the date of separation. For purposes of this opinion, we will assume that the parties separated on July 15, 1995.

settlement conference statements. Appellant's statement listed the family residence and its furnishings as her major separate property assets, and the property taxes on the residence among her debts. Appellant also disputed respondent's assertion that he was unemployed. Respondent's bench/bar conference statement again claimed the residence as community property, based on the purchase documentation, appellant's written memorandum of January 8, 1993, stating the residence was community property, and other evidence respondent had "participated fully in the purchase of the property." Among other things, respondent also claimed as community property a $90,000 commission paid to appellant for business transacted during the marital period.

Based on appellant's health problems, the bench/bar conference was continued, and the matter set for trial on July 10, 1997. On June 11, 1997, appellant again retained Attorney Ruben to represent her, and sought a continuance. In opposition, respondent's attorney pointed out appellant had already had almost two years to conduct discovery; the matter had been at issue for seven months; and appellant had made no efforts to settle the dissolution despite respondent's offers to do so. Respondent's attorney stated he was "more than willing to meet with [appellant's] counsel, go over all of my documents on these issues, [and] make any reasonable factually based resolution" without the "need to do discovery." According to respondent's attorney: "The discovery they want are the documents that are in my file, which I will make available to them at any reasonable time and place without the necessity of formal discovery. I have made this offer as much as three weeks ago, but have yet to hear from counsel."[4] On June 23, 1997, the trial court granted appellant's attorney a 30-day continuance of the trial date,

---

[4]In his June 10, 1997, opposition to continuation of the matter, respondent's attorney stated: "Petitioner [appellant] filed her Petition August 19, 1995, almost two years ago. She has had ample time to conduct her discovery. [¶] . . . The At-Issue Memorandum was filed in this matter on November 1, 1996, seven months prior to the filing of this motion. [¶] . . . Petitioner has offered no excuse whatsoever why she is not prepared to go to trial, why she has not conducted her discovery, why she waited until the last minute to re-hire her original attorney, or given any other valid reason why this case should not move forward. [Respondent] Mr. King has been patient, but has a right to the division of the property. Petitioner continues exclusive possession of the family residence, which is community property and it is prejudicial to Mr. King to continue to wait now almost two years for his return of his investment. [¶] [Appellant] Ms. King and her counsel have made no efforts whatsoever to settle this case. . . . I have offered to meet and confer with opposing counsel, to make my file available to him, but I have not received any answer to my offer. [¶] Prior to counsel coming into this case, I wrote Ms. King a letter telling her that I would be willing to meet with her to try to resolve this matter, but have not as yet received any response to my letter. . . . [¶] . . . [¶] With regard to Ms. King's statement that she needs to do discovery on the reimbursement and characterization of debts and assets, I am more than willing to meet with counsel, go over all of my documents on these issues, [and] make any reasonable factually based resolution. There is no need to do discovery. The discovery they want are the

and set the matter for a bench/bar settlement conference to take place on August 11, 1997.

By supplemental bench/bar conference statement filed on August 7, 1997, appellant's attorney, Ruben, claimed the family residence as appellant's separate property, but recognized that appellant "realizes that the community may have right to reimbursement and/or a pro tanto interest in the home" for community payments made to reduce the principal balance of the mortgage. On appellant's behalf, Ruben contended appellant's January 8, 1993, memorandum "was written under duress and undue influence caused by Respondent who stood over [her] and insisted she write the statement" at a time when appellant was "heavily medicated and in an extremely weakened state of mind . . . ." In addition, Ruben requested reimbursement for any insurance policy renewals or "other deferred or later received income" on insurance business transacted during the marital period, claiming that respondent "failed to produce documents establishing the amounts of this income in response to [appellant's] request for production of documents, and continues to refuse to produce such documentation to date."

The bench/bar settlement conference took place on August 11, 1997, before two judges pro tempore, Sarah Wills Friesendorf and Sandra Acevedo, both of the family law bar. The parties have disputed the fairness of the bench/bar conference. Appellant asserts it was "a travesty," in which her attorney (Ruben) was unprepared and unwilling to negotiate an agreement fair to her interests; she was forcibly excluded from portions of the discussions for a period of "at least two hours" while respondent and the parties' attorneys made all the decisions without consulting her; she had no "input" in the contents of the settlement agreement; and she acquiesced in the settlement only after "both of the attorneys repeatedly informed her that she could not afford to go to trial because it would cost $20,000 for her to try the case."

Respondent disputes appellant's version of the facts. Based primarily on the subsequent deposition testimony of Attorney Ruben, respondent contends Ruben spent at least six to eight hours meeting with appellant and preparing before the bench/bar conference on August 11, 1997; because of her hostile and insulting behavior toward respondent and his attorney, appellant was asked to leave the settlement conference for a period of approximately 20 minutes; appellant left the room voluntarily and without protest; during this 20-minute period, no decisions or agreements were made

---

documents that are in my file, which I will make available to them at any reasonable time and place without the necessity of formal discovery. I have made this offer as much as three weeks ago, but have yet to hear from counsel."

on any of the issues in dispute; except for this 20-minute period, Attorney Ruben was with appellant most of the day starting from 8:00 a.m.; no one ever threatened appellant or raised their voice at her during the settlement negotiations; Ruben discussed all of the issues privately with appellant, and received "input" from her "on every single issue" raised, discussed, or agreed upon during the bench/bar conference and the resulting settlement; Ruben was not aware of any medical or mental reason why appellant could not participate in the settlement proceedings; and appellant was not prevented from participating in the settlement agreement in any way.

At 4:00 p.m. the parties placed the settlement agreement on the record. The court asked the parties and their attorneys to interrupt if they wanted to make any correction to the settlement agreement as it was read into the record, "[b]ecause once this goes on the record, and once it becomes the Judgment of the Court, there is no going back. There is no buyer's remorse. There is no doing it tomorrow. It's a done deal. Whether or not it's in writing, once it's on the record, that's the deal. [¶] So I just want to be sure that everybody pays real close attention, and if you don't understand something, ask a question."

Respondent's attorney then read into the record the settlement agreement, under which the parties agreed, among other things, to place the family residence on the real estate market for sale within 30 days; to reimburse appellant $44,000 for separate property contributions towards the acquisition of the residence under Family Code section 2640; to reimburse respondent $18,643.50 for his community share of funds he paid from postseparation earning toward community debts; to pay various community debts from proceeds of the sale of the residence; to divide the remaining proceeds from the sale between the parties, 52 percent to appellant and 48 percent to respondent; to reimburse respondent for his community share of certain community commissions received by appellant; to reimburse respondent 45 percent of certain other commissions received by appellant in 1997 or thereafter; to waive all spousal support; to waive final disclosure of assets and stipulate that preliminary disclosure documents and records had been exchanged; and to reserve jurisdiction in the trial court over possible disputes between the parties, including the division of personal property.

At various points, appellant interrupted with requests for clarification or objections. After respondent's attorney had finished reading the settlement agreement into the record, the court asked appellant's attorney if he had anything to add; he responded, "No. That covers it." The court then voir dired appellant, asking her if she "heard and understood all the terms of the agreement as recited" by respondent's attorney; if it was her "desire that

these terms become your final agreement" and that the terms be incorporated in the final judgment; whether she was "knowingly and willingly entering into this agreement today"; whether she "had adequate opportunity to discuss this matter" with her attorney; whether she "understood [her] legal rights with respect to this matter"; whether she understood "this agreement will become final today"; and whether she understood and appreciated "the waiver of any alimony in this case, [or] payment of spousal support." To all of these questions, appellant responded, "Yes." Finally, the court asked appellant whether there was anything about the settlement agreement she did not understand, to which she responded, "No." At that point, appellant's attorney raised the question of whether the parties had made final disclosure, and a stipulation waiving "further final disclosure" was entered on the record.[5]

Although appellant orally and distinctly agreed on the record that the terms of the stipulated agreement as read into the record at the conclusion of the bench/bar settlement conference represented the parties' final agreement and would be incorporated in the judgment of dissolution, appellant thereafter sought to renegotiate part of the settlement agreement. When respondent and his attorney refused appellant's effort to renegotiate, appellant refused to sign the written settlement agreement. Respondent then filed a motion pursuant to section 664.6 to enforce the settlement and enter judgment in accordance with the bench/bar settlement conference stipulation.

At the hearing on respondent's motion on September 16, 1997, appellant represented herself in propria persona. She claimed she was barred from the settlement negotiations for hours; was "screamed at" by the other participants, including her own attorney; was left out while respondent and the two attorneys "made all the deals"; and was "totally railroaded" into settlement. Through his attorney, respondent disputed appellant's assertions, asserted he was being prejudiced and harassed by appellant, and argued that appellant was simply trying to renegotiate the issues addressed by the settlement agreement. The trial court granted respondent's motion to enter judgment, and ordered appellant to cooperate in the selling of the community residence and pay respondent $1,000 in attorney fees pursuant to Family Code section 271. Judgment of dissolution was filed on September 16, 1997, incorporating the settlement as agreed to at the bench/bar conference. Notice of entry of judgment of dissolution was filed on September 19, 1997, and findings and orders after hearing were entered on September 23, 1997.

---

[5]The following colloquy took place: "Mr. Ruben: I was going to put out one other thing. I don't know if final disclosure was made to the parties.

"The Court: The parties want to stipulate?

"Mr. Greene [respondent's attorney]: Stipulate preliminary to final and we waive—

"The Court: Both parties waive further final disclosure? [¶] Okay."

Four months later, on January 20, 1998, appellant filed a motion to set aside the judgment under section 473, subdivision (b). The motion was taken off calendar on February 17, 1998, when the parties failed to appear. On March 3, 1998, appellant refiled an identical motion. Appellant argued that (a) she should be granted relief from the judgment on grounds of "mistake, inadvertence, surprise, or excusable neglect"; (b) her motion was timely because it was brought within six months of the August 11, 1997, judgment of dissolution and the challenged findings and order after hearing made on September 16, 1997; (c) the settlement agreement and judgment should be set aside because it did not comply with general principles of contract law; (d) because appellant did not sign the settlement agreement, it lacked her express consent; (e) appellant's oral consent to the agreement was obtained through duress, menace, fraud, undue influence or mistake caused by the coercive tactics of respondent's attorney and the negligence of appellant's own attorney, Ruben; (d) appellant's poor health and physical weakness made her more susceptible to undue influence and duress; (e) and because of the failure of Attorney Ruben to conduct adequate discovery, appellant did not have adequate information at the time of the stipulated settlement agreement to make informed consent.

On March 25, 1998, the parties took the depositions of both appellant and her former attorney, Ruben. Under questioning by respondent's attorney at her deposition, appellant acknowledged that she spent a great deal of time with Ruben discussing all the issues raised in the bench/bar conference; she came to believe respondent had unreported residual commissions *before* the bench/bar settlement conference; appellant did not raise these issues in her settlement conference statement because "we did not do adequate discovery"; other than saying he thought respondent would win the case if it went to trial, respondent's attorney did not exert any undue influence on appellant; although she claimed Attorney Ruben exerted undue influence on her by telling her it would cost $20,000 to take the case to trial, she was actually willing to spend that much money to try the case; appellant knew that no settlement could be made without her express concurrence, and that any discussions that took place outside of her presence were not binding on her; and at the time the matter was put on the record under oath, she understood all the terms of the settlement agreement and concurred with those terms.[6]

In his deposition, Attorney Ruben testified that respondent produced "substantial" responses to all of his discovery requests, formal and informal,

---

[6]"[MR. GREENE (respondent's attorney):] Wasn't it, in fact, your understanding on August the 11th, 1997 that any settlement had to be made with your express concurrence?

"A. [Appellant] Yes.

"Q. And at the time that we put this matter on the record in front of the court reporter and the Bench Bar panel when you were sworn in to testify, you concurred with the terms of the settlement, did you not?

"A. I did.

including several boxes of documents; he never complained to anyone that respondent's discovery responses were inadequate; "[t]o the best of [his] knowledge" respondent did not fail to produce anything; there were no documents he wanted to see that were not produced or shown to him; he met extensively with appellant and went over all the issues to be discussed at the bench/bar conference; appellant was asked to leave the bench/bar settlement negotiations for only 20 minutes when her behavior became "hostile and insulting," and counterproductive to any negotiations; no decisions or agreements were made while appellant was out of the room; no one ever raised their voice with or threatened appellant; he never saw appellant in tears at any point during the bench/bar negotiations or conference; and he received "input" from appellant "on every single issue that was raised" in the course of the bench/bar conference.

At the hearing on appellant's section 473 motion on March 31, 1998, appellant's new attorney advised the court that "[t]he primary basis" of appellant's motion was the fact appellant was asked to leave the room for approximately 20 minutes during the settlement negotiations. In addition, appellant's attorney argued that appellant believed a different outcome would have resulted had Attorney Ruben pursued discovery more vigorously.

---

"Q. And isn't it also your understanding that to the extent that your attorney met with me or met with me and Mr. King outside of your presence, that no agreements were made or could have been made that were binding on you?
"A. Yes.
"Q. That's your understanding, is it not?
"A. Yes. [¶] . . . [¶]
"A. When I realized that you were only taking my commissions into account and not his.
"Q. When was that?
"A. I don't recall.
"Q. Was it before or after the settlement?
"A. Before.
"Q. So you knew in your own mind, before the settlement, that Mr. King, at least in your opinion, had commissions that were community property, is that right? Before the Bench Bar?
"A. Yes.
"Q. Did you communicate that to your attorney?
"A. I don't recall. [¶] . . . [¶]
"Q. Okay. Well, you understood the terms of the settlement, didn't you?
"A. Yes.
"Q. And your attorney had gone over them with you in some detail, hadn't he?
"A. Yes.
"Q. Was there any term that you had any misunderstanding about?
"A. No.
"Q. So you were fully aware of each and every term, weren't you?
"A. Yes."

Through his attorney, respondent argued that appellant's attorney, Ruben, had been handicapped by the fact appellant had not retained him until shortly before the bench/bar conference; despite this fact, Ruben had nevertheless "propounded a substantial amount of discovery" to respondent and subpoenaed documents from insurance companies, "all of which was complied with"; in response to appellant's "voluminous" request for production of documents, respondent had produced "several boxes full of documents" at a photocopying cost of over $1,100; appellant had requested "all" of respondent's bank accounts and business records, "and all of that was produced"; respondent had only refused one late request by Ruben for reopening discovery just four days before the bench/bar conference; in his deposition, Ruben had testified that all of the discovery requests "were fully complied with"; Ruben had asked appellant to leave the bench/bar conference negotiations for only 20 minutes "because she was rude, . . . abusive, calling [respondent] names, and acting very inappropriately"; in contrast to appellant's behavior, no one raised his voice, "screamed" at, or was rude or abusive toward appellant during the bench/bar conference; Ruben spent a considerable amount of time going over documents with appellant; appellant's claims regarding respondent's supposed income and commissions were incorrect, unsubstantiated and unsupported by any evidence; and if the settlement was not affirmed, the only change in result would be to the benefit of respondent, not appellant.[7] Respondent requested sanctions against appellant in the form of attorney fees for bringing a "frivolous" motion.

Following the hearing, the trial court took appellant's section 473 motion under submission. On April 14, 1998, the trial court issued its decision, denying the motion. The trial court noted that it had previously been required to enter judgment when appellant failed to execute the proposed judgment despite her agreement on the record at the time of the bench/bar conference, resulting in sanctions against appellant of $1,000 for attorney fees and costs. The court stated: "Having reviewed the matter once again, [appellant]'s motion to set aside the Judgment is denied. [Appellant's] motion is frivolous and without grounds and therefore [appellant] is ordered to pay to Respondent an additional sum of $2,500 towards the attorneys fees and costs he has incurred in defending against the motion." The trial court also ordered appellant to cooperate in the sale of the residential community property.

Form findings and order after hearing were filed on June 2, 1998, and notice of entry of judgment was mailed to appellant on June 3, 1998. Before

---

[7]Among other things, respondent's attorney pointed out that although appellant had claimed at her deposition that respondent's tax returns showed he had income of $106,300 in 1995, in fact his 1995 tax return showed he had income of only $15,000 that year.

this, on May 1, 1998, appellant filed her notice of appeal from the order denying her request to set aside the judgment of dissolution, and purportedly also "from the order made on September 16, 1997 and from the stipulated judgment made on August 11, 1997." On May 14, 1997, appellant filed an amended notice of appeal "from the Decision dated April 14, 1998 denying her motion to set aside the judgment of dissolution in this case and directing [her] to pay $2,500 attorney's fees. Appeal is also taken from the underlying Order of September 16, 1997 directing entry of the judgment of dissolution and directing [her] to pay $1,000 attorney's fees. Appeal is also taken from the underlying Bench/Bar Settlement Agreement made pursuant to oral stipulation of August 11, 1997 upon which the judgment of dissolution was based."

## JURISDICTIONAL ISSUES

In October 1998, shortly after the record on appeal was filed, respondent filed a motion to dismiss the appeal in part, arguing that appellant's notice of appeal was untimely insofar as it purported to be taken from the stipulated judgment of dissolution between the parties made at the conclusion of the bench/bar conference on August 11, 1998, and from the order of September 16, 1997, granting respondent's motion for entry of judgment on the earlier stipulation. By order dated December 16, 1998, this court deferred ruling on the motion to dismiss until consideration of the appeal on the merits. Thus, before turning to the merits of the appeal, we must now address the jurisdictional issue raised by respondent's motion to dismiss.

### Untimeliness of Notice of Appeal from Underlying Judgment

For appellate jurisdiction, the critical time line in this case is as follows: The parties stipulated to judgment of dissolution on August 11, 1997. When appellant failed or refused to sign the stipulated judgment, respondent moved for entry of judgment pursuant to section 664.6 on September 8, 1997. Following a hearing, the trial court granted respondent's motion by judgment filed and dated September 16, 1997. Notice of entry of judgment was filed *and mailed* on September 19, 1997. On September 23, 1997, the trial court filed findings and order after hearing; these were mailed on September 24, 1997, and notice of entry thereof was filed on September 25, 1997. More than seven months later, on May 1, 1998, appellant filed her original notice of appeal, purportedly from both the stipulated judgment of dissolution of August 11, 1997, and the September 16, 1997, order granting respondent's motion for entry of judgment, as well as from the trial court's order and decision of April 14, 1998, denying appellant's section 473 motion to set aside the judgment of dissolution.

Under California Rules of Court, rule 2(a),[8] a notice of appeal must be filed on or before the *earliest* of the following dates: (a) 60 days after the date of mailing notice of entry of judgment; (b) 60 days after the date of service of notice of entry of judgment by any party upon the party filing the notice of appeal; or (c) 180 days after the date of entry of judgment. Because notice of entry of judgment in this case was mailed on September 19, 1997, the 60-day period for filing a notice of appeal expired at the latest on November 18, 1997. During that time period, appellant took absolutely no action to file a notice of appeal, to seek an extension of time to do so, or otherwise to contest the judgment. Instead, on January 20, 1998, almost *four months* after notice of entry of judgment was mailed, appellant filed her motion for relief from judgment under section 473. Appellant's notice of appeal, in turn, was not filed until May 1, 1998. Although this was clearly timely as measured from the trial court's April 16 decision on appellant's section 473 motion (and actually premature with respect to the June 2, 1998, findings and order after the hearing on that motion), it was *more than seven months* after the notice of entry of judgment of dissolution was mailed on September 19, 1997.

Thus, appellant's purported appeal of both the bench/bar conference stipulated settlement agreement of August 11, 1997, and the September 16, 1997, order directing entry of judgment of dissolution pursuant to that stipulation is untimely as a matter of law, unless the delay was otherwise excused by rule or statute. Rule 3 sets out four situations in which the normal time for filing a notice of appeal may be extended.[9] The only one of these exceptions potentially applicable to this case is that for a validly

---

[8]Unless otherwise indicated, all further references to rules are to the California Rules of Court.

[9]Rule 3 provides in pertinent part as follows: "(a) When a valid notice of intention to move for a new trial is served and filed by any party and the motion is denied, the time for filing the notice of appeal from the judgment is extended for all parties until 30 days after either entry of the order denying the motion or denial thereof by operation of law, but in no event may such notice of appeal be filed later than 180 days after the date of entry of the judgment whether or not the motion for new trial has been determined.

"(b) When a valid notice of intention to move to vacate a judgment or to vacate a judgment and enter another and different judgment is served and filed by any party on any ground within the time in which, under rule 2, a notice of appeal may be filed, or such shorter time as may be prescribed by statute, the time for filing the notice of appeal from the judgment is extended for all parties until the earliest of 30 days after entry of the order denying the motion to vacate; or 90 days after filing the first notice of intention to move to vacate the judgment; or 180 days after entry of judgment.

"(c) When a timely notice of appeal is filed . . . , any other party may file a notice of appeal within 20 days after mailing of notification by the superior court clerk of such first appeal . . . .

"(d) When the same party has served and filed valid notices of intention to move for a new trial and to move for entry of a judgment notwithstanding the verdict, and both motions are denied or not decided by the superior court within 60 days after the filing of the notice of

noticed motion to vacate the judgment. Under rule 3(b), "[w]hen a valid notice of intention to move to vacate a judgment . . . is served and filed by any party on any ground *within the time* in which, under rule 2, a notice of appeal may be filed, or such *shorter* time as may be prescribed by statute, the time for filing the notice of appeal from the judgment is extended for all parties until the *earliest* of 30 days after entry of the order denying the motion to vacate; or 90 days after filing the first notice of intention to move to vacate the judgment; or 180 days after entry of judgment." (Italics added.)

Contrary to respondent's position on this appeal, there is nothing in either rule 2 or rule 3 that would exclude a section 473 motion for relief from judgment such as the one filed by appellant in this case from the kinds of "motion to vacate" for which an extension of time to file an appeal may be authorized.[10] To the contrary, rule 3(b) specifically provides that a timely motion to vacate "on any ground" will extend the time for filing a notice of appeal. A motion to set aside a judgment under section 473 qualifies as such a motion for purposes of extending the time to file a notice of appeal under rule 3(b). (*Lamb v. Holy Cross Hospital* (1978) 83 Cal.App.3d 1007, 1010 [148 Cal.Rptr. 273]; *Duncan v. Sunset Agricultural Minerals* (1969) 273 Cal.App.2d 489, 491-492 [78 Cal.Rptr. 339]; *Garcia v. City etc. of San Francisco* (1967) 250 Cal.App.2d 767, 769-770 [58 Cal.Rptr. 760]; 9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, §§ 487-488, pp. 532-533; Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 1999) ¶ 3:82, p. 3-24.4.)

Nevertheless, in order to extend the jurisdictional time for filing a notice of appeal, the motion to vacate or set aside *itself must have been timely*; that is, such a motion must have been served and filed within either the *normal*

---

intention to move for a new trial, the time for filing the notice of appeal from the judgment or from the denial of the motion to enter a judgment notwithstanding the verdict is extended for all parties until the earlier of 30 days after entry of the order denying the motion for a new trial or its denial by operation of law, or 180 days after entry of the judgment."

[10]The case cited by respondent for this proposition is inapposite. In *Estate of Hanley* (1943) 23 Cal.2d 120 [142 P.2d 423, 149 A.L.R. 1250], notice of appeal was filed one day past the statutory period. In opposing a motion to dismiss the appeal, the would-be appellant argued she and her attorney had been misinformed about the actual date the applicable order was filed. The Supreme Court held the 60-day period for filing a notice of appeal was jurisdictional, and that "[i]n the absence of statutory authorization, neither the trial nor appellate courts may extend or shorten the time for appeal [citation], even to relieve against mistake, inadvertence, accident, or misfortune [citations]. Nor can jurisdiction be conferred upon the appellate court by the consent or stipulation of the parties, estoppel, or waiver. [Citations.] If it appears that the appeal was not taken within the 60-day period, the court has no discretion but must dismiss the appeal of its own motion even if no objection is made. [Citations.]" (*Id.* at p. 123.) Because no section 473 motion had been filed, let alone any motion to vacate or set aside the order, the issue of whether such an order could extend the time for filing a notice of appeal was not presented or addressed.

time period for filing a notice of appeal under rule 2, or any *shorter* time period prescribed by applicable statute. (Rule 3(b).) Thus, although section 473 provides a motion under that statute must be made "within a reasonable time, in no case exceeding six months, after the judgment," in order *also* to extend the time for filing a notice of appeal from the underlying judgment such a section 473 motion must be filed within the more limited parameters of rule 2; this is, within the normal rule 2 time period of 60 days from mailing or service of entry of judgment. (Rule 2(a)(1), (2).) The *outside* time limit for filing a notice of appeal remains 180 days after entry of judgment in all cases; authorized extensions of the filing period will *not* stretch the appeal deadline beyond this limit. (Rule 2(a)(3); *Carpiaux v. Peralta Community College Dist.* (1989) 215 Cal.App.3d 1220, 1223 [264 Cal.Rptr. 208]; *Howard v. Lufkin* (1988) 206 Cal.App.3d 297, 300 [253 Cal.Rptr. 422]; Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs, *supra,* ¶¶ 3:18, 3:62, 3:83, pp. 3-8 to 3-9, 3-23, 3-24.4.)

In this case, appellant filed her section 473 motion on January 20, 1998, four months after notice of entry of judgment was mailed on September 19, 1997, and two months past the 60-day deadline for filing a notice of appeal from that judgment. During the intervening time period, appellant had not taken any action to contest the judgment or extend the time for filing a notice of appeal. Although service and filing of the section 473 motion *could have* extended the time for filing an appeal from the judgment, this would only have been possible had appellant filed the motion within the *earliest* of the various applicable deadlines set by rule 2(a) and section 473 itself. Under the circumstances presented here, this means appellant was required to file her section 473 motion within 60 days after the notice of entry of judgment was mailed by the superior court clerk on September 19, 1997, i.e., no later than November 18, 1997. Because she failed to do so, there was no extension of the jurisdictional time to file notice of appeal from the judgment of dissolution. Thus, even though appellant's May 1, 1998, notice of appeal was timely with respect to the trial court's order denying her section 473 motion, it was *more than five months late* with respect to the underlying judgment of dissolution. We therefore have no jurisdiction to review the merits of the judgment. Neither have we any discretion but to dismiss the appeal insofar as it purports to seek review of the stipulated judgment of August 11, 1997, and the order entering judgment on September 16, 1997. (*Van Beurden Ins. Services, Inc. v. Customized Worldwide Weather Ins. Agency, Inc.* (1997) 15 Cal.4th 51, 56 [61 Cal.Rptr.2d 166, 931 P.2d 344] (*Van Beurden*); *Hollister Convalescent Hosp., Inc. v. Rico* (1975) 15 Cal.3d 660, 670-674 [125

Cal.Rptr. 757, 542 P.2d 1349] (*Hollister*); *Estate of Hanley, supra,* 23 Cal.2d at pp. 122-124; rule 45(c), (e).)[11]

*Asserted Extensions of Time for Filing Appeal*

Appellant has made a number of arguments in an effort to persuade us that her notice of appeal from the judgment of dissolution and underlying stipulated judgment was not untimely, and that this court still retains jurisdiction to consider the merits of her purported appeal from those judgments. None of these arguments has any merit.

*Effect of Family Code Sections 2120 et seq.*

Appellant contends this appeal is actually governed by the provisions of Family Code section 2120 et seq., pursuant to which a motion to set aside a stipulated judgment of dissolution may be brought within one year after the date of entry of judgment. Appellant maintains these Family Code provisions were intended to ameliorate the more rigid time requirements for setting aside a judgment under Code of Civil Procedure section 473, and have the effect of greatly extending the time within which a spouse may attack or seek to alter a dissolution judgment on grounds of fraud, perjury, duress, mental incapacity, and mistake. Because her motion to set aside the judgment—originally filed on January 20, 1998, and then refiled on March 3, 1998—was filed within one year of the judgment of dissolution in September 1997, she insists these provisions of the Family Code render her notice of appeal timely both as to the motion to set aside *and* as to the underlying judgment of dissolution. Appellant's argument misses the mark.

The most obvious problem with appellant's argument is that her motion to set aside the judgment was not expressly brought under these provisions of the Family Code. Nowhere in the record is there any mention of Family Code sections 2121 and 2122, nor is there the slightest suggestion appellant's motion to set aside was brought under any provision of law other than Code of Civil Procedure section 473. As a general rule, having chosen to file her motion in the trial court under section 473 and base all her arguments below upon that provision, appellant should not at this late date be permitted to change the entire basis of her motion because in hindsight it now seems expedient for her to do so. "A party is not permitted to change his [or her] position and adopt a new and different theory on appeal. To permit him [or

---

[11]Rule 45 provides in pertinent part: "(c) The time for filing a notice of appeal . . . shall not be extended. . . . [¶] . . . [¶] (e) The reviewing court for good cause may relieve a party from a default occasioned by any failure to comply with these rules, *except the failure to give timely notice of appeal.* . . ." (Italics added.)

her] to do so would not only be unfair to the trial court, but manifestly unjust to the opposing litigant." (*Ernst v. Searle* (1933) 218 Cal. 233, 240-241 [22 P.2d 715]; see also *Zito v. Firemen's Ins. Co.* (1973) 36 Cal.App.3d 277, 283 [111 Cal.Rptr. 392] (*Zito*) [" ' "a party cannot, after trying a case on a well-defined theory accepted by all the parties and the court, raise for the first time in the appellate court the question of the correctness of that theory" ' "].)

Regardless of the fact she did not cite Family Code section 2120 et seq., in bringing her motion to set aside the dissolution judgment, appellant nevertheless contends her motion should be construed as coming within the equitable scope of those provisions. In support, she cites broad language in Family Code sections 2120 and 2121 setting forth legislative declarations of public policy favoring "decisions freely and knowingly made" in all dissolution proceedings and "full disclosure of community, quasi-community, and separate assets, liabilities, income, and expenses" (Fam. Code, § 2120, subd. (a)); stating that the "public policy of assuring finality of judgments must be balanced against the public interest in ensuring proper division of marital property, in ensuring sufficient support awards, and in deterring misconduct" (Fam. Code, § 2120, subd. (c)); and specifically providing that in all dissolution proceedings a court "may, on any terms that may be just, relieve a spouse from a judgment . . . after the six-month time limit of Section 473 . . . has run, based on the grounds, and within the time limits, provided by this chapter." (Fam. Code, § 2121, subd. (a); see also *id.*, § 2120, subd. (d).)[12]

Assuming without deciding that the Legislature did in fact intend the equitable scope of these provisions to be broad enough to encompass any

---

[12]Family Code section 2120 provides as follows: "The Legislature finds and declares the following:

"(a) The State of California has a strong policy of ensuring the division of community and quasi-community property in the dissolution of a marriage as set forth in Division 7 (commencing with Section 2500), and of providing for fair and sufficient child and spousal support awards. These policy goals can only be implemented with full disclosure of community, quasi-community, and separate assets, liabilities, income, and expenses, as provided in Chapter 9 (commencing with Section 2100), and decisions freely and knowingly made.

"(b) It occasionally happens that the division of property or the award of support, whether made as a result of agreement or trial, is inequitable when made due to the nondisclosure or other misconduct of one of the parties.

"(c) The public policy of assuring finality of judgments must be balanced against the public interest in ensuring proper division of marital property, in ensuring sufficient support awards, and in deterring misconduct.

"(d) The law governing the circumstances under which a judgment can be set aside, after the time for relief under Section 473 of the Code of Civil Procedure has passed, has been the subject of considerable confusion which has led to increased litigation and unpredictable and inconsistent decisions at the trial and appellate levels."

Family Code section 2121 provides as follows: "(a) In proceedings for dissolution of marriage, . . . the court may, on any terms that may be just, relieve a spouse from a judgment, or any part or parts thereof, adjudicating support or division of property, after the

motion to set aside a judgment of dissolution of marriage, whether or not such motion is explicitly brought under the Family Code, the question remains whether these provisions also extend or otherwise affect the time within which a notice of appeal must be filed from the underlying dissolution judgment. Although these Family Code provisions are clearly intended to and do in fact greatly extend the time within which a spouse may seek relief from a dissolution judgment *in the trial court*, we conclude that they do not, and were not intended to have, any effect on the jurisdictional time limitations for filing a notice of *appeal*.

Family Code sections 2121 and 2122 establish longer time limitations of up to one year—and in cases of duress or mental incapacity, up to two years—for bringing actions or motions to set aside or modify dissolution judgments. Thus, Family Code section 2121 provides that a court may set aside a judgment of dissolution after the six-month time limit established by Code of Civil Procedure section 473 has run. Under Family Code section 2122, subdivision (e), an action or motion to set aside a stipulated or uncontested judgment of dissolution based on mistake of law or fact may be brought within one year after the date of entry of judgment. (Fam. Code, §§ 2121, 2122, subd. (e); *In re Marriage of Varner* (1997) 55 Cal.App.4th 128, 137 [63 Cal.Rptr.2d 894] (*Varner*).)[13] Based on these extended time periods, appellant insists that the timely filing of a motion under Family

six-month time limit of Section 473 of the Code of Civil Procedure has run, based on the grounds, and within the time limits, provided in this chapter.

"(b) In all proceedings under this chapter, before granting relief, the court shall find that the facts alleged as the grounds for relief materially affected the original outcome and that the moving party would materially benefit from the granting of the relief."

[13]Family Code section 2122 provides as follows: "The grounds and time limits for a motion to set aside a judgment, or any part or parts thereof, are governed by this section and shall be one of the following:

"(a) Actual fraud where the defrauded party was kept in ignorance or in some other manner, other than his or her own lack of care or attention, was fraudulently prevented from fully participating in the proceeding. An action or motion based on fraud shall be brought within one year after the date on which the complaining party either did discover, or should have discovered, the fraud.

"(b) Perjury. An action or motion based on perjury in the preliminary or final declaration of disclosure or in the current income and expense statement shall be brought within one year after the date on which the complaining party either did discover, or should have discovered the perjury.

"(c) Duress. An action or motion based upon duress shall be brought within two years after the date of entry of judgment.

"(d) Mental Incapacity. An action or motion based on mental incapacity shall be brought within two years after the date of entry of judgment.

"(e) As to stipulated or uncontested judgments or that part of a judgment stipulated to by the parties, mistake, either mutual or unilateral, whether mistake of law or mistake of fact. An action or motion based on mistake shall be brought within one year after the date of entry of judgment."

Code section 2122 for relief from a dissolution judgment within one year of the judgment automatically extends the time for filing an appeal from the underlying judgment.

Appellant is wrong. Even if we construe appellant's motion as having been brought under Family Code sections 2121 and 2122, these Family Code provisions manifest no intention, express or implied, either to supersede the well-established rules governing the timing of a notice of appeal or to extend that time. On their face, these provisions simply establish longer statutory limitation periods for filing actions or motions challenging dissolution judgments in the trial court. They have no effect on the time for filing an appeal *from* a trial court's orders or judgments; indeed, they do not mention the time for filing a notice of appeal at all. Even if a party has one or two years to file an action or a motion to set aside a dissolution judgment *in the trial court*, any subsequent *appeal* would be from the judgment or order *thereafter* entered granting or denying that request to set aside, rather than from the underlying judgment of dissolution. In other words, even if appellant's motion to set aside *were* filed pursuant to Family Code section 2122, that fact would have no effect on the jurisdictional time within which appellant would be required to file her notice of appeal from the underlying judgment of dissolution. That time period remains governed by the filing deadlines established by rules 2 and 3. Under those deadlines, appellant's purported appeal of the underlying dissolution order and judgment thereon is untimely. (Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs, *supra,* ¶¶ 3:4-3:6, 3:10-3:19, 3:37-3:38, pp. 3-1 to 3-2, 3-7 to 3-9, 3-15.)[14]

### Estoppel

Aside from her contention that the time for filing her appeal from the underlying dissolution judgment is governed by the provisions of the Family Code, appellant makes a number of other arguments. First, she asserts

---

[14]The question addressed here—the effect of a motion to set aside a dissolution judgment under Family Code sections 2120, 2121 and 2122 on the time for filing a notice of appeal from the underlying judgment—appears to be one of first impression.

Two cases cited by the parties did not address this issue, and are distinguishable on their facts. In both *Varner, supra,* 55 Cal.App.4th 128, and *In re Marriage of Rosevear* (1998) 65 Cal.App.4th 673 [76 Cal.Rptr.2d 691] (*Rosevear*), the appellants filed motions to set aside the respective dissolution judgments within six months of their entry, under both Code of Civil Procedure section 473 and Family Code sections 2120, 2121 and 2122. Significantly, the notices of appeal in both those cases were filed from the orders denying the respective motions to set aside the dissolution judgments *only,* and did *not* purport to appeal from the underlying judgments themselves. Moreover, in each case, the principal question on appeal concerned the standards for review of an appeal from an order denying a motion to set aside a dissolution judgment under the Family Code. Thus, issues of the timeliness of a purported appeal from the underlying judgment were neither raised nor addressed. (*Rosevear, supra,* 65 Cal.App.4th at pp. 680-687; *Varner, supra,* 55 Cal.App.4th at pp. 133-144.)

respondent is estopped from claiming the motion to set aside the judgment was untimely, because respondent conceded at the March 31, 1998, hearing that the timeliness of the motion was not at issue.

Appellant's estoppel argument confuses the entirely separate time requirements for filing a section 473 motion to set aside a judgment with those for filing a notice of appeal from the same judgment. Regardless of the timeliness of appellant's motion under section 473, she failed to file it within the time limits required by rules 2 and 3 for extending the period for filing a notice of appeal. Thus, even though the section 473 motion to set aside was *itself* timely under the provisions of that statute, it was *not* timely for purposes of extending the time for appellant to appeal the underlying judgment of dissolution. Appellant's appeal of the trial court's denial of her section 473 motion is an entirely separate matter from her purported appeal of the September 16, 1997, order directing entry of judgment and the stipulated agreement of August 11, 1997. In any event, jurisdiction to review the merits of an appeal can never be conferred upon an appellate court by the consent or stipulation of the parties, estoppel, or waiver. (*Hollister, supra,* 15 Cal.3d at p. 674; *Estate of Hanley, supra,* 23 Cal.2d at p. 123.)

### Uncertainty of Notice of Entry of Judgment

■ Second, appellant contends her appeal should be heard because there was no proper notice of entry of judgment in this case and the jurisdictional time for appeal therefore remains uncertain. Specifically, appellant asserts the notice of entry of judgment was defective and ambiguous because, although mailed on September 19, 1997, it purports to give notice that judgment was entered on "10/11/97." Because of this clerical error in the notice, appellant insists the standard rule 2(a) 60-day period for filing a notice of appeal simply does not apply. The contention is meritless.

It is established law that a technical defect in the notice of entry of judgment cannot be invoked to avoid the rule 2(a) 60-day period for filing a notice of appeal, unless the defect was arguably so egregious as effectively to preclude any *actual notice* of entry of judgment. (*Delmonico v. Laidlaw Waste Systems, Inc.* (1992) 5 Cal.App.4th 81, 85-86 [6 Cal.Rptr.2d 599]; *National Advertising Co. v. City of Rohnert Park* (1984) 160 Cal.App.3d 614, 618-619 [206 Cal.Rptr. 696]; *Pacific City Bank v. Los Caballeros Racquet & Sports Club, Ltd.* (1983) 148 Cal.App.3d 223, 228 [195 Cal.Rptr. 776]; Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs, *supra,*

¶¶ 3:33.3, 3:33.4, 3:36, 3:116, pp. 3-13, 3-14, 3-33.)[15] The reasons for this rule are well illustrated by the instant case. The reference to "10/11/97" on the notice of entry of judgment was apparently a typographical error. To the extent appellant was uncertain as to the date of judgment, she made no attempt to bring this matter to the attention of either the trial court or opposing counsel. To the contrary, it is clear she had actual notice of entry of judgment, since her section 473 motion was unambiguously filed with respect to the September 16, 1997, order entering judgment on the stipulated dissolution of August 11, 1997.

In any event, even if we were to construe from the clerk's notice that the dissolution judgment was actually entered on October 11, 1997, appellant's May 1, 1998, notice of appeal would still be untimely by some five months. Her section 473 motion was not filed until January 20, 1998, which was more than 60 days later and therefore not in time to extend the time for filing a notice of appeal under rules 2 and 3.[16]

### Finality of Judgment

■ Third, appellant contends the dissolution judgment was not final for purposes of appeal, and therefore not appealable. Assertedly, because the September 16, 1997, judgment noted the parties had not yet "fully divided their personal property" and reserved judgment over that issue, the judgment was interlocutory and appellant's notice of appeal merely premature.

Appellant's assertion, once again, is meritless. A court will look to the substance of an order or judgment rather than its chronology or form. Even

---

[15]"It is well-established that no particular form is required to give notice to a party that judgment has been entered. [Citation.] Even though the notice here incorrectly stated the date on which the judgment was entered, the information contained in that notice satisfied the rule telling [appellant] that the judgment had been entered. Because it is the notice that triggers the appeal period and not the date the judgment was entered, there is no rational way that the inaccuracy could have misled [appellant]. In light of the language and purpose of the rule, the date on which the judgment is entered is surplusage when notice is given by using the document entitled 'notice of entry of judgment.' Accordingly, there is no principled basis on which we can avoid the application of rule 2(a)(2)'s 60-day period." (*Delmonico v. Laidlaw Waste Systems, Inc., supra,* 5 Cal.App.4th at pp. 85-86.)

[16]*Van Beurden, supra,* 15 Cal.4th 51, the case on which appellant relies, is factually inapplicable and does not support her argument. In *Van Beurden,* the Supreme Court addressed the technical rules for determining when time commences for a trial court to rule on a new trial motion under sections 629, 659, 660, and 664.5, as well as rule 3(d). *Van Beurden* rests on a close reading of the specific requirements of section 664.5 with respect to a trial court's jurisdiction to rule on a valid new trial motion. (15 Cal.4th at pp. 56-66.) There was no motion for a new trial in this case, and none of these provisions are applicable here. *Van Beurden* clearly does not stand for the generalized proposition advanced by appellant here that any ambiguity in a notice of entry of judgment results in a virtually open-ended, indefinite waiver of the time for filing a notice of appeal.

if it is technically interlocutory, an order dispositive of the rights of the parties in relation to a collateral matter, or directing payment of money or performance of an act, may be subject to direct appeal. For this reason, it has long been established that severable portions of a judgment may be separately appealed, particularly in dissolution cases. (*In re Marriage of Skelley* (1976) 18 Cal.3d 365, 368 [134 Cal.Rptr. 197, 556 P.2d 297]; *In re Marriage of Fink* (1976) 54 Cal.App.3d 357, 362-363 [126 Cal.Rptr. 626].) The September 16, 1997, judgment of dissolution was appealable, even though the severable issue of personal property remained unresolved. As an appealable judgment, it was subject to the normal rules for the filing of a notice of appeal. Appellant's failure timely to file such a notice from the judgment is not excused by the fact the trial court reserved jurisdiction to resolve severable issues regarding the parties' personal property.

### Equitable Extension

 Finally, as a last resort, appellant insists we should overlook the untimeliness of her notice of appeal and address the merits of her claims regarding the stipulated settlement order and dissolution judgment entered thereon, because of "the unfair and inequitable methods by which those orders were obtained and entered." By now, the well-established rule hardly needs restating that the time for filing a notice of appeal is absolutely jurisdictional, and cannot be extended by a trial or appellate court without statutory authorization, even for reasons of mistake, estoppel, or other equitable considerations. (*Hollister, supra,* 15 Cal.3d at pp. 666, 674; *Estate of Hanley, supra,* 23 Cal.2d at pp. 122-124; *Freiberg v. City of Mission Viejo* (1995) 33 Cal.App.4th 1484, 1488 [39 Cal.Rptr.2d 802]; rule 45(e); Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs, *supra,* ¶¶ 3:110-3:111, pp. 3-31 to 3-32.) In short, appellant's May 1, 1998, notice of appeal was untimely as a matter of law, to the extent it purported to seek review of the September 16, 1997, dissolution judgment and the stipulated agreement of August 11, 1997.

### Issues Raised on Appeal from Denial of Section 473 Motion

██ We turn to address the remaining issues properly raised on this appeal from the trial court's denial of appellant's Code of Civil Procedure section 473 motion. Preliminarily, we note that appellant has tried to raise many new issues not raised in the trial court below. All of these concern the validity of the August 11, 1997, stipulated settlement and the September 16, 1997, order entering judgment thereon. First, she now contends the parties' August 11, 1997, in-court stipulation waiving final disclosure was procedurally defective because respondent assertedly failed to meet statutory requirements under Family Code sections 2105, 2106 and 2120, and the trial court

therefore erred in accepting the stipulation and granting respondent's motion to enter judgment on September 16, 1997. Second, she contends the September 16, 1997, dissolution judgment is not supported by the evidence of the parties' respective assets and liabilities. Third, she argues the August 11, 1997, bench/bar settlement agreement and September 16, judgment should have been set aside based on respondent's alleged fraud, breach of fiduciary duty, and undue influence over appellant during the marriage and in the period of separation *before* the bench/bar conference. Finally, she asserts the terms of the bench/bar settlement of August 11, 1997, and the September 16, 1997, judgment entered thereon violated her constitutional rights to substantive and procedural due process, equal protection, and freedom of speech.

In fact, *none* of these issues may be addressed on this appeal, because they were never raised in the trial court below on appellant's section 473 motion to set aside the dissolution judgment or at any other time. It is well° established that issues or theories not properly raised or presented in the trial court may not be asserted on appeal, and will not be considered by an appellate tribunal. A party who fails to raise an issue in the trial court has therefore waived the right to do so on appeal. (*In re Marriage of Hinman* (1997) 55 Cal.App.4th 988, 1002 [64 Cal.Rptr.2d 383]; *In re Aaron B.* (1996) 46 Cal.App.4th 843, 846 [54 Cal.Rptr.2d 27]; *Steele v. Totah* (1986) 180 Cal.App.3d 545, 551-553 [225 Cal.Rptr. 635]; *Zito, supra,* 36 Cal.App.3d at p. 283.) Because appellant failed to raise these issues in the trial court despite ample opportunity to do so, she has waived the right to do so now. These issues arise from the August 11, 1997, settlement agreement and the September 16, 1997, order entering judgment thereon instead of from the postjudgment section 473 motion. Our consideration of them is jurisdictionally barred by appellant's failure to file a timely notice of appeal from either the stipulated agreement or the dissolution judgment.[17]

Thus, the only justiciable issue before this court is the propriety of the trial court's denial of appellant's motion to set aside the dissolution judgment pursuant to section 473. The sole contentions raised by appellant in

---

[17]It is important to emphasize that, even were we to construe appellant's section 473 motion as having also been filed under Family Code section 2120 et seq., we could still only address those issues appellant *actually raised before the trial court.* As seen, the undisputed record shows that many of the issues appellant now attempts to raise on appeal were not raised or argued below. Thus, whether or not appellant's motion to set aside was filed under the provisions of the Family Code, this procedural fact would not permit her to bootstrap onto this appeal any arguments regarding the underlying judgment that were not already raised on the motion to set aside in the trial court below.

This fact further distinguishes this case from both *Rosevear* and *Varner.* In each of those cases, the only issue raised on appeal was the propriety of the trial court's order denying the respective appellant's motion to set aside the stipulated dissolution judgment. Neither appellant attempted to raise any new issues on appeal not addressed by the trial court on the motion to set aside. (*Rosevear, supra,* 65 Cal.App.4th at pp. 681-684; *Varner, supra,* 55 Cal.App.4th at pp. 133, 136-144.)

that proceeding were the following: (1) the stipulated agreement of August 11, 1997, was void, unenforceable, not in compliance "with general principles of contract law," and lacked appellant's valid consent, because of (a) alleged menace, duress and undue influence occurring *at* the bench/bar conference, (b) appellant's medical condition "[t]hroughout this litigation," and (c) the negligence, mistakes and malfeasance of her former attorney, Ruben; and (2) the order of September 16, 1997, entering judgment of dissolution was premature. We therefore turn to address these issues in the context of our review of the trial court's denial of appellant's section 473 motion to set aside the dissolution judgment.

### Standard of Review

The standard for appellate review of an order denying a motion to set aside under section 473 is quite limited. A ruling on such a motion rests within the sound discretion of the trial court, and will not be disturbed on appeal in the absence of a clear showing of abuse of discretion, resulting in injury sufficiently grave as to amount to a manifest miscarriage of justice.[18] Where a trial court has discretionary power to decide an issue, an appellate court is not authorized to substitute its judgment of the correct result for the decision of the trial court. (*Rosevear, supra,* 65 Cal.App.4th at pp. 681-683; *County of Alameda v. Risby* (1994) 28 Cal.App.4th 1425, 1431 [34 Cal.Rptr.2d 333]; *In re Marriage of Carter* (1971) 19 Cal.App.3d 479, 494 [97 Cal.Rptr. 274].) " ' "The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court." ' [Citations.]" (*Rosevear, supra,* 65 Cal.App.4th at p. 682.) The burden is on the complaining party to establish abuse of discretion, and the showing on appeal is insufficient *if it presents a state of facts which simply affords an opportunity for a difference of opinion.* (*Ibid.*)

### No Abuse of Discretion

Appellant's first claim in her section 473 motion was that the stipulated agreement of August 11, 1997, was void, unenforceable, not in compliance "with general principles of contract law," and lacked appellant's valid consent, because of the alleged menace, duress and undue influence inflicted upon her, both during the bench/bar settlement negotiations, and at

---

[18]Section 473, subdivision (b) states in pertinent part: "The court may, upon any terms as may be just, relieve a party . . . from a judgment, dismissal, order, or other proceeding taken against him or her through his or her mistake, inadvertence, surprise, or excusable neglect. Application for this relief . . . shall be made within a reasonable time, in no case exceeding six months, after the judgment, dismissal, order or proceeding was taken. . . ."

the court proceeding during which the settlement agreement was placed on the record. As evidence, she cites her exclusion from a portion of the discussions during the settlement conference; overt hostility allegedly manifested toward her by respondent and both attorneys; and her own hysteria and tractability caused by the combined pressure of both attorneys and their warnings that going to trial would cost her at least $20,000.

Each of appellant's claims of alleged duress and undue influence is contradicted by substantial evidence in the record. Contrary to appellant's claims of being barred from settlement discussions for a lengthy period of time while her attorney worked out a deal with respondent and his attorney, the record clearly shows appellant was asked to leave the conference for at most 20 minutes because of her own abusive and hostile behavior; she left voluntarily and without protest; no decisions or agreements were made in her absence; and she had ample opportunity to discuss every single issue with her own attorney throughout the day. Similarly, appellant's claims that she was "screamed at" by both attorneys and was reduced to hysterical crying by their threats and pressure are contradicted by the sworn affidavits of both attorneys and respondent. The evidence shows it was appellant herself who acted in an hostile and abusive manner during the bench/bar conference. Most important, there was *no evidence* that appellant was not cognizant and aware of all the issues discussed in negotiating the settlement agreement.

Appellant's second claim in her section 473 motion was that her medical condition rendered her unable to give valid consent to the settlement agreement. Once again, this claim is contradicted by substantial evidence in the record. Neither Ruben, respondent, respondent's attorney, nor the pro tempore judges at the bench/bar settlement conference was aware of any medical reason why appellant could not participate in those proceedings. The evidence was that although appellant did suffer health problems, they occurred months before the bench/bar conference, by which time she was able to participate fully and actively in the negotiations.

Appellant's central claim in the section 473 motion was that the stipulated agreement was rendered hopelessly unfair to her by the negligence, mistakes and malfeasance of her former attorney, Ruben. This claim continues to play an important part in her arguments on appeal. Thus, appellant claims she acquiesced in the settlement agreement because of her attorney's (a) negligence in prosecuting discovery and preparing her case for the bench/bar conference, (b) waiver of the requirement of a final declaration of disclosure, and (c) failure to obtain information about and records of certain alleged community funds in the form of commissions appellant believed respondent had received and not divulged to her.

There are two basic flaws to this portion of appellant's claims. First, the adequacy of appellant's discovery efforts, respondent's production of documents in response thereto, and the performance of appellant's attorney are all disputed issues of fact. The record contains substantial evidence that appellant and her attorney initiated substantial discovery, and respondent and his attorney provided complete and, indeed, voluminous responses to all of appellant's discovery requests. In light of the narrow standard of review applicable on this appeal of the trial court's denial of appellant's section 473 motion, we may not reweigh this evidence now.

Second, although appellant places great emphasis on her claim that respondent did not disclose crucial information about his commissions and other possible sources of income, she has also acknowledged she *was aware* of these alleged commissions and sources of income as early as the time of respondent's January 1997 income and expense declaration, and she fully believed they were critical to an equitable division of property *months before* the time of the bench/bar conference. Yet appellant did not depose respondent about this matter at any time, although she had ample opportunity to do so. She could not even recall if she communicated this information to her attorney before the bench/bar conference. Moreover, notwithstanding the acknowledged fact that prior to the time the stipulated agreement was placed on the record appellant believed her attorney had failed to perform adequate discovery, she answered every voir dire question asked by the pro tempore judge affirmatively and placed her agreement on the record. To the extent appellant's claims are based on the alleged negligence and malfeasance of her attorney or any purported failures to pursue adequate discovery, these claims are not grounds for setting aside a judgment under section 473. Although by statute attorney negligence is not a *bar* to setting aside a dissolution judgment, this fact does not make it a basis for doing so. (Fam. Code, § 2124; *Rosevear, supra,* 65 Cal.App.4th at pp. 686-687.)

The facts of this case are remarkably similar to those in *Rosevear, supra,* 65 Cal.App.4th 673. In that case, as in this, the parties were both represented by counsel during an all-day bench/bar settlement conference in the course of which they discussed the issues between themselves and their attorneys, and each side made certain concessions to the other. At the conclusion of the bench/bar conference, the parties reached an agreement that was read into the record in the presence of the parties, their attorneys, and the members of the bench/bar panel. As in this case, the pro tempore judge carefully admonished both parties about the binding nature of their stipulated agreement, and asked each of them if they had heard the agreement as read, understood its terms, had the opportunity to discuss it with their attorneys, and agreed to be bound by it. Each spouse responded affirmatively. Although the wife executed the stipulated judgment, she subsequently refused

to execute the original appearance, stipulation and waiver form necessary to obtain a final judgment. Just as was respondent in the instant case, the husband was required to file a motion to enter judgment under section 664.6, and the wife thereafter filed a motion pursuant to section 473 to set aside the stipulated judgment on the alleged grounds of duress, undue influence and mistake. The trial court granted the husband's motion to enter judgment and denied the wife's motion to set it aside, on the grounds both parties had been represented by counsel at the bench/bar conference, and had been properly and thoroughly voir dired by the court before settlement was approved and entered. This court affirmed on appeal. (*Rosevear, supra,* 65 Cal.App.4th at pp. 680-687.)[19]

Here, as in *Rosevear*, appellant was thoroughly voir dired at the time of orally agreeing to the stipulated dissolution settlement on the record of the bench/bar conference. She responded affirmatively to every question posed about her knowledge and understanding of, consent to, and discussion with her attorney about every issue in this case, and she clearly indicated that she understood and agreed to be bound by the terms of the settlement. Aside from the powerful evidence of appellant's express acknowledgments on voir dire, the record shows that every fact she now claims as a basis for seeking reversal of the judgment was actually known to her prior to the bench/bar conference and at the time she stipulated on the record to the settlement agreement. Similarly unavailing are appellant's assertions that she failed to obtain an equitable division of community property because of the mistakes of her attorney. As we held in *Rosevear*, the alleged negligence of appellant's attorney does not by itself provide grounds for setting aside the judgment. (*Rosevear, supra,* 65 Cal.App.4th at p. 686.)

On this record, we therefore conclude the trial court did not abuse its discretion in denying appellant's section 473 motion to set aside either the

---

[19]As seen, a major distinguishing factor between this case and *Rosevear* is that, in that case, the wife's motion to set aside the stipulated judgment was filed under *both* Code of Civil Procedure section 473 *and* Family Code sections 2120, 2121 and 2122; and the principal question on appeal concerned the proper standard of review on appeal from an order denying a motion to set aside a dissolution judgment under those Family Code provisions. (*Rosevear, supra,* 65 Cal.App.4th at pp. 680-687.) Here, the only issues properly on appeal are those raised in connection with appellant's section 473 motion. That statute establishes somewhat narrower grounds for setting aside, vacating or altering a stipulated dissolution judgment than do the subject provisions of the Family Code, and the scope of our review on appeal is correspondingly narrower.

stipulated marital settlement or the trial court's judgment entered in accordance therewith.[20]

## ATTORNEY FEES

 Finally, appellant contends both that the trial court erred in awarding attorney fees to respondent, and that we should award attorney fees to her on this appeal. Neither contention has merit. The trial court's award of attorney fees to respondent was within its broad discretionary authority to do so under Family Code section 271. Although reasonable minds may differ as to whether appellant's conduct in prosecuting her Code of Civil Procedure section 473 motion was frivolous, we cannot conclude that the trial court abused its discretion in concluding that it was. Clearly, since appellant's claims on this appeal are all meritless, there are no grounds for granting her own request for attorney fees on this appeal.

Respondent has also requested that we award him his attorney fees as sanctions for appellant's allegedly frivolous appeal. We decline to do so. Appellant's claims are meritless, and some may possibly be said to border on the frivolous. Nevertheless, we cannot say the appeal *itself* was frivolous. At the very least, appellant was entitled to appeal the trial court's award of sanctions against her below.

## DISPOSITION

The order denying appellant's motion to set aside the judgment of dissolution is affirmed.

Corrigan, J., and Parrilli, J., concurred.

A petition for a rehearing was denied May 22, 2000, and appellant's petition for review by the Supreme Court was denied August 9, 2000.

---

[20]Appellant has not raised on this appeal the final contention of her section 473 motion that the September 16, 1997, order entering the dissolution judgment was premature. We therefore view that issue as abandoned.