Filed 2/5/14  Marriage of Scheinberg CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| In re the Marriage of CELESTE and RICHARD D. SCHEINBERG. | 2d Civil No. B247624 (Super. Ct. No. 1341339) (Santa Barbara County) |
| CELESTE SCHEINBERG, Appellant, v. RICHARD D. SCHEINBERG, Respondent. | |

Celeste Scheinberg violated the parties' marital settlement agreement (MSA) by amending her 2009 tax returns to claim half of the parties' estimated quarterly tax payments for that year but not half of their income.  As a result, she received a "windfall" tax refund of $419,009.23, and shifted much of her tax obligation under the MSA to her former spouse, Richard Scheinberg.  The trial court rectified this inequity by ordering Celeste to amend her returns to comply with the MSA and to permit Richard to

sequester a portion of a $1.6 million lump sum spousal support payment to ensure her compliance.[1]

Celeste contends that Richard released any claims regarding the 2009 taxes when he executed a settlement agreement resolving the parties' employment and support disputes. She also asserts the trial court lacked authority to sequester the spousal support payment. We conclude that Celeste forfeited the release defense by failing to adequately raise it in the trial court, and that the court appropriately sequestered the support payment pending resolution of the tax issues. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Celeste and Richard, an orthopedic surgeon, were married in September 1997. They separated in December 2009, and Celeste petitioned for dissolution. During the marriage, the parties lived on income from Richard's three corporations: Richard D. Scheinberg, M.D., Inc., Pueblo Surgery Center, Inc., and Oxnard Industrial Physical Therapy, Inc. Celeste provided bookkeeping and billing services for these businesses.

In April 2010, the parties stipulated to entry of judgment pursuant to the MSA, which accorded Celeste $8 million in cash as her portion of the community estate. It also awarded her monthly spousal support of $12,500, monthly child support of $10,000 and the opportunity to continue as Richard's medical biller with income of at least $30,000 per month. It provided that if her billing income fell below $30,000 for two consecutive months, Celeste could request modification of spousal support.

Paragraph 12.7 of the MSA provided that "[e]ach Party will report on his or her own return one-half of any community property income (including earnings from personal services rendered prior to the Separation Date) and income or gain from separate property. Each Party will be entitled to credits for one-half of any tax witholdings from the community income and for one-half of any estimated taxes paid from his or her respective community property . . . ." In 2010, the parties filed separate state and federal

---

[1] "As is customary in family law proceedings, we refer to the parties by their first names for purposes of clarity and not out of disrespect. [Citations.]" (*Rubenstein v. Rubenstein* (2000) 81 Cal.App.4th 1131, 1136, fn. 1.)

2

tax returns for the 2009 tax year, with each party reporting one-half of all income and taking equal credit for the estimated quarterly tax payments.

When Celeste's billing income fell below the agreed-upon level, Celeste moved for modification of spousal support and sought damages for breach of contract. Richard moved to terminate her employment contract, among other things. A mediation of these disputes in August 2012 resulted in a court-approved settlement agreement in which the parties terminated their employment relationship. Richard agreed to pay Celeste a lump sum spousal support payment of $1.6 million, in exchange for a waiver of further spousal support. The agreement stated, in part, that "[e]xcept as otherwise provided in [the agreement] and the April 14, 2010 Judgment[/MSA], each party hereby releases the other from all interspousal obligations, including any and all obligations set forth in paragraphs 4.1 and 4.4 of the April 14, 2010 Judgment, whether incurred before or after the effective date, and all claims to the property of the other set forth in those paragraphs. . . ." The release extended "to all claims, whether known or unknown," and waived the provisions of Civil Code section 1542.

While refinancing his home to obtain the $1.6 million settlement payment, Richard discovered a copy of an Internal Revenue Service (IRS) refund check in the amount of $419,009.23, payable to Celeste. Shortly thereafter, he received a notice from the California Franchise Tax Board stating that his 2009 personal income tax return was under examination for reporting only 50 percent of the income from two of his corporations. He subsequently discovered that Celeste had amended her 2009 federal and state tax returns to claim half of the parties' tax withholdings for that year, but not half of their income. She claimed that most of the 2009 income was Richard's separate property.

Richard's accountant advised that the amended returns violated the MSA, placing Richard "at risk of receiving corollary upward adjustments to [his] tax liability from the taxing agencies." To ameliorate that risk, Richard paid Celeste $850,000 of the lump sum spousal support payment, deposited the remaining $750,000 in an interest-bearing account and requested an order sequestering that sum pending resolution of the 2009 tax issues. Richard also moved for an order requiring Celeste to amend her 2009

3

tax returns to claim half of all the 2009 income, as required by the MSA. Celeste filed an order to show cause (OSC) re contempt based on Richard's failure to pay the entire $1.6 million spousal support amount. She maintained that she was entitled to claim credit for half the estimated tax payments made in 2009, but was not responsible for the taxes on half the income. Celeste opposed Richard's request for an evidentiary hearing and also contended that the trial court lacked authority to sequester the amounts due as spousal support based upon *Keck v. Keck* (1933) 219 Cal. 316, superseded by statute on another ground as stated in *Muller v. Reagh* (1959) 173 Cal.App.2d 1, 5. She sought an award of attorney fees under Family Code section 2030.

After determining that an evidentiary hearing was unnecessary, the trial court granted Richard's motion to require Celeste to amend her 2009 tax returns. It observed that "[b]oth the writings and the logic of the matter suggest to me that the funds are community property and that returns need to be amended accordingly and anything else really doesn't make much sense." Finding *Keck* inapplicable, the court also granted Richard's request to sequester the $750,000. It denied Celeste's request for attorney fees, noting that "both of these parties have sufficient money for fees, so they should pay their own." The OSC re contempt was taken off calendar.

Celeste objected to the proposed findings submitted by Richard and offered her own findings. The trial court subsequently entered orders providing, inter alia, that under the terms of the MSA, all 2009 income earned before separation is community property, that Celeste's tax returns must be amended to comply with the MSA, and that the $750,000 shall remain sequestered "pending resolution of the 2009 tax filing dispute." Celeste appeals.

DISCUSSION

*Release of Claims*

Celeste does not appeal the trial court's determination that all the 2009 income is community property and must be reported as such. She contends Richard released any claims regarding the 2009 tax returns when he agreed to waive "all known and unknown claims" in the August 2012 settlement agreement involving the

4

employment and spousal support issues. Richard asserts that Celeste forfeited this "release" defense by failing to adequately present it to the trial court. It is true that nothing in the record suggests that Celeste was asserting that the release barred Richard from pursuing his claims regarding the 2009 taxes. The issue was not briefed or brought to the trial court's attention. Celeste now invites us to decide in the first instance whether those claims were in fact released. We decline to do so.

The tax dispute was hotly contested. The parties filed over 400 pages of documents in connection with Richard's motions and Celeste's OSC re contempt, request for attorney fees and objections to the trial court's findings. It appears that Celeste's only reference to the release appeared in two introductory sentences on the first page of a 28-page opposition. The first sentence stated: "On August 13, 2012 RICK and CELESTE entered into a Stipulation and Order settling all 'known and unknown' claims they had or may have against each other." The next one stated: "Despite . . . the Order Re: Settlement of Permanent Spousal Support containing a release of all claims, RICK has embarked on a systematic attempt to force CELESTE to reduce the amount of the spousal support settlement . . . ." Neither sentence referenced the tax dispute, and the release was not mentioned again. Celeste did not discuss it in the argument section or in any of the other numerous documents she filed. She did not raise it when, according to her, the trial court "ignored" the release at the hearing. She also did not include it in her objections to Richard's proposed findings or in her own proposed findings.

"It is well established that issues or theories not properly raised or presented in the trial court may not be asserted on appeal, and will not be considered by an appellate tribunal." (*In re Marriage of Eben-King & King* (2000) 80 Cal.App.4th 92, 117.) In other words, issues and theories not properly raised in the trial court are forfeited on appeal. (*DiCola v. White Bros. Performance Products, Inc*. (2008) 158 Cal.App.4th 666, 677; *City of San Diego v. D.R. Horton San Diego Holding Co., Inc.* (2005) 126 Cal.App.4th 668, 685.)

Celeste concedes the issue was not "flesh[ed] out" in the trial court, but argues that we can interpret the release as a matter of law based on "the undisputed and

presumed facts." This argument ignores the unfairness that flows to the trial court and the opposing party when an appellate court decides an issue when the facts relevant to the issue were not developed in the trial court. (*In re Marriage of Eben-King & King, supra*, 80 Cal.App.4th at pp. 110-111; *Cable Connection, Inc. v. DIRECTV, Inc.* (2008) 44 Cal.4th 1334, 1350, fn. 12 [allowing new theory on appeal is "'. . . not only . . . unfair to the trial court, but manifestly unjust to the opposing litigant'"].)

In one of his replies, Richard inserted a footnote stating that "[n]either Rick nor Celeste 'waived' their right to enforce the terms of the judgment. We assume that Celeste did not intend to seriously suggest that they did." If this assumption was wrong, Celeste had ample opportunity to "correct" it. If she had done so, Richard could have offered extrinsic evidence to aid the trial court's interpretation of the release language. (See *Beard v. Goodrich* (2003) 110 Cal.App.4th 1031, 1037; *Morey v. Vannucci* (1998) 64 Cal.App.4th 904, 912.) The court also could have addressed the apparent factual disputes regarding when the claim accrued and the release went into effect. (See *Winchester Mystery House, LLC v. Global Asylum, Inc.* (2012) 210 Cal.App.4th 579, 594; *Crouse v. Brobeck, Phleger & Harrison* (1998) 67 Cal.App.4th 1509, 1526-1527, fn. 3.) Richard contends, for example, that the claim did not exist until he received the audit letter from the Franchise Tax Board, while Celeste asserts that it accrued when she mailed him copies of the amended tax returns. In the absence of any reasonable effort to raise and address these issues in the trial court, we conclude that Celeste's contentions regarding the release are forfeited on appeal.

Although the issue is forfeited, it appears from the record presented that the parties did not intend to settle and release *all* known and unknown claims arising under the comprehensive MSA. The settlement agreement addressed only the employment and spousal support provisions. It stated that *"[e]xcept as otherwise provided in [the agreement] and the April 14, 2010 Judgment[/MSA],* each party hereby releases the other from all interspousal obligations, including any and all obligations set forth in paragraphs 4.1 and 4.4 of the April 14, 2010 Judgment, whether incurred before or after the effective date, and all claims to the property of the other set forth in those paragraphs. This release

6

extends to all claims based on the rights that have accrued post the marriage, including, but not limited to, support claims. *The parties have considered and provided for such claims in this [agreement].*" (Italics added.)

The MSA contained more than 75 numbered paragraphs. Paragraphs 4.1 and 4.4 addressed the issues that were settled, i.e., "Amount and Payment of [Spousal] Support" and "Wife's Future Work for Husband's Businesses." The parties' specific reference to those two paragraphs in the release implies that they did not intend to include matters in other paragraphs. Indeed, no other interpretation makes sense. The MSA continued to govern the parties' ongoing rights and obligations regarding, inter alia, child custody and support, payment of college expenses, insurance coverage, taxation of support payments and retirement benefits, dependent tax exemptions, estimated tax payments and refunds, audit of joint tax returns and allocation of capital losses. The settlement agreement did not "consider[] and provide[]" for claims arising out of these provisions, as it did with spousal support and employment claims. It stands to reason, therefore, that claims involving these other provisions were not intended to fall within the scope of the release.

*Sequestration of Spousal Support*

Relying upon *Keck,* Celeste contends the trial court erred as a matter of law by allowing Richard to sequester a portion of the $1.6 lump sum spousal support payment to secure her compliance with the MSA's tax provisions. We disagree.

*Keck* was decided during the Great Depression. The wife was destitute while the husband was worth $50,000. Although the wife was indebted to the husband, the court awarded her spousal support of $100 per month and determined that the husband could not offset the support award against the pre-existing debt. (*Keck v. Keck, supra,* 219 Cal. at pp. 319-320.) That is not the situation here. There is no pre-existing debt, and Richard does not claim he is entitled to any of the sequestered funds. He acknowledges that once Celeste's tax returns are amended to comply with the MSA, the funds will be released to either Celeste or the taxing authorities. They will not be refunded to Richard.

7

*Keck* further observed that "where *a liberal support allowance suitable to the circumstances and financial condition of the parties is made*, the court should have the right in a proper case to provide as a part of the decree that the husband may withhold a portion of the allowance each month in payment of his wife's indebtedness to him." (*Keck v. Keck, supra,* 219 Cal. at p. 320, italics added.) Thus, even if a debt to Richard was involved, it is difficult to imagine a more "proper case" for sequestration of support. (*Id.* at p. 320.)

Unlike the wife in *Keck,* Celeste is not relying upon monthly spousal support to make ends meet. (See *Bradley v. Superior Court* (1957) 48 Cal.2d 509, 522 [spousal support has "'. . . for its sole object the provision of food, clothing, habitation, and other necessaries for . . . support'"].) Celeste received $8 million in cash when the divorce was finalized in 2010. Over the next two years, she received monthly spousal support of $12,500, monthly child support of $10,000 and billing income of at least $30,000 per month. In 2012, she received $850,000 of the lump sum support payment. She also has the $419,009.23 tax refund which she obtained in violation of the MSA. Indeed, but for that violation, she would have received the entire $1.6 million spousal support payment and this litigation would have been unnecessary. Celeste has not shown that *Keck* or any other authority precluded the sequestration of support under these circumstances.

## DISPOSITION

The orders are affirmed. Respondent shall recover his costs on appeal.

NOT TO BE PUBLISHED.


PERREN, J.

We concur:


GILBERT, P. J.


YEGAN, J.

8

Colleen K. Sterne, Judge

Superior Court County of Santa Barbara

_____

Diane M. Matsinger; Wilson & Pettine, Paul A. Pettine, Ann Canova for Appellant.

Law Office of Vanessa Kirker Wright and Vanessa Kirker Wright for Respondent.