Filed 5/28/14  Lumina v. Umina CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(El Dorado)

----

| | |
|---|---|
| LUKE ANTHONY PAUL LUMINA, | C066560 |
| Plaintiff and Respondent, | (Super. Ct. No. PC20050702) |
| v. | |
| LEONARD J. UMINA, | |
| Defendant and Appellant. | |

In this case, defendant Leonard J. Umina seeks review of a money judgment against him for unjust enrichment.  Finding no merit in his arguments, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Although the record on appeal here is quite extensive, for our purposes, the underlying facts may be briefly stated.  Plaintiff Luke Lumina (formerly known as

1

Anthony Umina) is the father of Leonard and of plaintiff Michael Umina.[1] Luke also has two daughters, Mary and Kathryn.

In 1997, Luke sold a 50-acre parcel of land to a developer (Ron Nation) for $3 million. The deal called for a large payment up front, with the remainder of the purchase price to be paid over time as the land was developed and interest to be paid monthly on the unpaid portion of the purchase price.

Following the Nation sale, Luke (at the age of 67) decided to go on a two-year church mission to Tonga. Before he departed, he made arrangements for the management of his financial affairs in his absence, including the proceeds from the Nation sale. These arrangements included four trusts, two powers of attorney, a living will, a last will and testament, and an annuity. One of the trusts was known as the LMMK Trust (named for the first initials of Luke's four children). The purpose of that trust was "to handle the proceeds of the Nation sale in such a way that it would be usable by the children for educational purposes, and also there would be a pension for [Luke]."

The parties have very different positions on how the proceeds of the Nation sale were ultimately to be transferred into the LMMK Trust. We need not choose a side on this issue, however, because what is undisputed is that the trust instrument identified all four of Luke's children as the " 'Donors' " and declared that they were "about to transfer and deliver to [Leonard and Michael as the trustees of the trust] certain of their property." The trust instrument also contained a provision specifying that the trust would be effective "when signed by the Donors, whether or not then acknowledged by the Donors or signed by a Trustee."

After returning from his mission, Luke learned that his daughters had not signed the LMMK Trust instrument and he tried to get them to sign it, but to no avail. While

---

[1] To avoid confusion, we will refer to the parties by their first names.

there was testimony that, at some later point, Kathryn signed the trust instrument, the copy she signed was later destroyed. Luke also destroyed the original trust instrument. It was undisputed that Mary never signed the trust instrument.

Fast forward several years following Luke's return from Tonga. In December 2005, Luke and Michael commenced the present proceeding by filing a petition to compel Leonard to account for his acts as trustee of the LMMK Trust since its inception.[2] At that time at least, Luke and Michael were apparently of the opinion that the trust existed. In March 2006, Leonard filed his own petition to compel Michael to account for *his* acts as trustee since inception of the trust.

In early May 2006, Luke filed a civil suit against Leonard, asserting (among other things) that Leonard had obtained money from Luke "by fraud and misrepresentation" while "acting in the capacity of trustee of the LMMK trust." A week later, at a case management conference in the original case, the court consolidated the two cases.

At some point that neither side clearly identifies, the validity of the LMMK Trust became an issue in the case. In a settlement conference statement filed in advance of a trial date scheduled for August 2007, Luke and Michael asserted that the validity of the trust was "[t]he initial issue which must be determined." In a later issues conference statement, they asserted that the issue of the trust's validity should be bifurcated from the other issues in the case and tried first. Leonard agreed.

In his trial brief for the first phase of the trial, Leonard took the position "that the LMMK Trust exists." In their trial brief, Luke and Michael took the position that the trust was never created because the trust instrument was never signed by all of the Donors and because the trust was "devoid of a res." Luke and Michael argued that with

---

[2] The initial petition also identified Julia (Luke's first wife), Mary, and Kathryn as petitioners. In March 2006, however, an amended petition was filed identifying only Luke and Michael as petitioners.

3

respect to certain funds that were "deposited . . . in bank accounts in the name of the LMMK Trust," "a trust - trustee relationship arose in regards to the acquisition of said funds, but . . . any trust that evolved thereby was either a constructive trust or a resulting trust and was not the trust set forth in the declaration of trust."

The validity of the LMMK Trust was tried over three days in September 2007. Following the trial, the parties submitted closing briefs. In November 2007, the trial court (Judge Proud) issued its ruling, finding that "the LMMK trust is not nor ever was a valid trust" because " 'the 'Donors' never signed this document" and because "[t]here was simply no credible evidence of the existence of a trust res." In its ruling, the trial court directed the attorney for Luke and Michael to prepare a judgment.[3] This was done, and the court entered that "judgment" in December 2007.

In February 2008, Leonard filed a timely notice of appeal from the December 2007 "judgment." While the appeal proceeded in this court, the underlying case proceeded to trial on the remaining issues. A jury trial was held over seven days in April 2008. The jury returned special verdicts awarding Luke $229,500 in damages for intentional misrepresentation, $1,102,500 in damages for false promise, and $229,500 in damages for unjust enrichment. Leonard moved for a new trial, arguing that the jury had failed to follow the instructions because in its verdict for false promise the jury found that Leonard intended to perform his promise when he made it, which should have resulted in a verdict in Leonard's favor on that cause of action.

---

**3**    This was incorrect because "[w]hen a factual issue raised by the pleadings is tried by the court separately and before the trial of other issues, . . . the court must *not* prepare any proposed judgment until the other issues are tried, except when an interlocutory judgment or a separate judgment may otherwise be properly entered at that time." (Cal. Rules of Court, rule 3.1591(a), italics added.) This was not a situation in which an interlocutory or separate judgment could be otherwise properly entered on the question of the trust's validity.

The trial court found that the verdict on the false promise cause of action was against the law and also found that because the intentional misrepresentation cause of action was based on the same set of facts as the false promise cause of action, the two verdicts were inconsistent with each other. Accordingly, the court granted a new trial on those two causes of action. The verdict on the unjust enrichment cause of action was unaffected.

The court entered its order on the new trial motion on July 3, 2008. Thereafter, Leonard filed a second notice of appeal. Ultimately, the new trial was scheduled for February 2009, but that trial date was later vacated by agreement and the matter was apparently suspended pending the resolution of Leonard's appeals.

In April 2009, Leonard voluntarily dismissed his second appeal. In August 2009, we dismissed Leonard's first appeal on the ground that the December 2007 "judgment" was not appealable.

Following the issuance of the remittitur in October 2009, Luke and Michael's attorney requested that the matter be set for trial. The case was ultimately tried to a jury over a number of days in August 2010. This time, the jury returned special verdicts in favor of Leonard on Luke's causes of action for intentional misrepresentation and false promise. Thereafter, on August 31, 2010, the court (Judge Brooks) entered judgment for Luke in the amount of $229,500 based on the verdict on the unjust enrichment cause of action from the first jury trial. Leonard filed a timely notice of appeal from the judgment in October 2010.

## DISCUSSION

### I

### *Scope Of Our Review*

In his opening brief, Leonard purports to identify eight issues that are presented for our review. In the discussion section of his brief, however, Leonard includes many headings and subheadings that do not clearly articulate any claim of error or insufficiency

5

of the evidence, and many of these headings are followed by text that is apparently intended as argument but lacks any discernible assertions of error and frequently is devoid of any legal authorities whatsoever. In the discussion that follows, we ignore those portions of Leonard's brief because " '[t]he reviewing court is not required to make an independent, unassisted study of the record in search of error or grounds to support the judgment. It is entitled to the assistance of counsel. Accordingly every brief should contain a legal argument with citation of authorities on the points made. If none is furnished on a particular point, the court may treat it as waived, and pass it without consideration.' [Citation.] [¶] It is the duty of appellants' counsel, not of the courts, 'by argument and the citation of authorities to show that the claimed error exists.' " (*Sprague v. Equifax, Inc.* (1985) 166 Cal.App.3d 1012, 1050.) Thus, we address only those issues raised in Leonard's brief where the arguments are sufficiently developed and supported by legal authority for the arguments to be cognizable.

II

*Validity Of The LMMK Trust*

On appeal, Leonard contends the trial court's ruling on the validity of the LMMK Trust was an abuse of discretion and contrary to the evidence. We disagree.

A

*Luke's Standing*

Leonard first contends "Luke had no standing as he was not a settlor, or beneficiary of LMMK, and if declared invalid, he would not, as an individual gain from the ruling." In support of this contention, Leonard cites the principle that a party " 'generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.' " (*Independent Roofing Contractors v. California Apprenticeship Council* (2003) 114 Cal.App.4th 1330, 1341, quoting *Warth v. Seldin* (1975) 422 U.S. 490, 499 [45 L.Ed.2d 343, 355].)

6

We reject this argument for three reasons. First, Leonard fails to show that he raised this argument in the trial court, and from our review of the record we find no indication that he did. In fact, when Luke and Michael asserted that the issue of the LLMK Trust's validity should be bifurcated from the other issues in the case and tried first, Leonard agreed without ever arguing that Luke had no standing to raise the validity issue. "A party who fails to raise an issue in the trial court has therefore waived the right to do so on appeal." (*In re Marriage of Eben-King & King* (2000) 80 Cal.App.4th 92, 117.)

Second, Leonard fails to acknowledge that the issue of the trust's validity was raised not only by Luke but also by *Michael*, both of whom were represented by the same attorney, and that he (Leonard) filed a petition to compel Michael to account for his acts as trustee of the LMMK Trust since its inception. Given Leonard's petition, certainly *Michael* had standing to raise the issue of the validity of the trust, even if Luke did not, because if the trust never existed, then Michael had no duty to account as trustee of the trust.

Third, Leonard fails to recognize that the validity of the LMMK Trust was central to Luke's civil suit against Leonard, as it had a direct bearing on the characterization of Leonard's actions with respect to the funds that were supposedly to be subject to the trust. Whether Luke was a trustor or beneficiary of the LMMK Trust, he was entitled to litigate the issue of the trust's validity in the course of litigating his suit against Leonard. Thus, Leonard's standing argument is without merit.

B

*Luke's Petition And Complaint*

Leonard next asserts that in his petition for accounting and in his complaint in the civil suit, Luke "stated [that the] LMMK Trust was created," and those statements should be regarded as admissions. Again, however, Leonard fails to show that he raised this argument in the trial court, and therefore he cannot raise it for the first time in this court.

7

(*In re Marriage of Eben-King & King*, *supra*, 80 Cal.App.4th at p. 117.) Also, as we have noted, Leonard specifically agreed to bifurcation and early trial of the issue of the trust's validity. "Under the doctrine of 'invited error' a party cannot successfully take advantage of error committed by the court at his request." (*Jentick v. Pacific Gas & Electric Co.* (1941) 18 Cal.2d 117, 121.) Having expressly agreed that the court should bifurcate the issue of the trust's validity and try that issue before the remainder of the case, Leonard cannot now be heard to complain that the issue should never have been tried because Luke admitted the existence of the trust in his pleadings.

## C

### *Notice To Beneficiaries*

Leonard appears to contend that the trial court could not legitimately adjudicate the validity of the LMMK Trust because Luke and Michael did not notify all of the beneficiaries of the trust of the proceeding. We reject this argument because Leonard has not shown that he raised it in the trial court, and therefore he cannot raise it for the first time in this court. (*In re Marriage of Eben-King & King*, *supra*, 80 Cal.App.4th at p. 117.) Moreover, because he specifically agreed that the trial court should bifurcate and try the issue of the trust's validity before the other issues in the case, Leonard is barred by the doctrine of invited error from now complaining that the validity of the trust was not properly before the court. (*Jentick v. Pacific Gas & Electric Co.*, *supra*, 18 Cal.2d at p. 121.)

## D

### *Signatures Of All Donors*

As we have noted, the LMMK Trust instrument expressly provided that "[t]his Trust shall be effective when signed by the Donors, whether or not then acknowledged by the Donors or signed by a Trustee." The Donors identified in the trust instrument were

8

Michael and Leonard and their two sisters, Mary and Kathryn. It was undisputed that Mary never signed the trust instrument.[4]

Leonard contends the signatures of all four Donors were not required to create the trust because a separate provision in the trust instrument provides that "[r]eference in this Instrument to the masculine shall be deemed to include the feminine and reference to the singular shall be deemed to include the plural, when the context so requires, and vice versa." In his view, under this provision "*plural and singular* are interchangeable," and therefore the reference to the plural "Donors" in the paragraph governing the effective date of the trust must be read to include the singular "Donor," such that the signature of a single Donor was sufficient to render the trust effective.

Under Massachusetts law, which governed the validity of the LMMK Trust, "[t]he legal effect to be given a document must be based on the words of the document itself, [citation], and must place 'no impossible strain on the words used . . . .' " (*Bourgeois v. Hurley* (Mass.App. 1979) 392 N.E.2d 1061, 1064.) Here, Leonard's assertion that plural and singular are interchangeable in the trust instrument ignores the express provision that this is so only "when the context so requires." Leonard does not explain why the context of the effective date provision would require us to read the plural "Donors" as the singular "Donor." The trust instrument provided at its outset that all four named Donors were "about to transfer and deliver to [the trustees] certain of *their* property" to be held in trust. (Italics added.) It certainly makes sense that all four Donors would have to sign the instrument -- thus agreeing to put their property in the trust -- before any of the

---

[4] Leonard asserts that because Luke and Michael destroyed the original trust document, "[w]e must presume that Mary did sign the LMMK Trust since those responsible for spoliation cannot prove she did not, due to their acts." Leonard does not show that he made this argument in the trial court and does not offer any legal authority in support of it. Indeed, as we have noted, it was undisputed that Mary did not sign the trust. Leonard cannot now argue otherwise for the first time on appeal, especially without any citation to authority for his spoliation argument.

Donors would be bound by the terms of the instrument. At the very least, we find no basis for concluding that the context of the effectiveness provision *requires* us to read the plural "Donors" as including the singular "Donor," such that the signature of a single Donor would have been sufficient to render the trust effective. For this reason, we find no error in the trial court's determination that the LMMK Trust never came into existence because the trust instrument was never signed by all four Donors.

## III

### *Conduct Of The 2008 Jury Trial*

Leonard contends the trial court lacked jurisdiction to conduct the 2008 jury trial that resulted in the verdict for unjust enrichment against him because of the then-pending appeal from the December 2007 "judgment." Leonard is mistaken. It is true that the taking of an appeal generally "vests jurisdiction in the appellate court and terminates the jurisdiction of the lower court." (*Estate of Hanley* (1943) 23 Cal.2d 120, 123.) However, "[a] reviewing court has jurisdiction over a direct appeal only when there is (1) an appealable order or (2) an appealable judgment." (*Griset v. Fair Political Practices Com.* (2001) 25 Cal.4th 688, 696.) As we have noted, we dismissed Leonard's appeal on the ground that the December 2007 "judgment" was not appealable. Because there was no appealable order or judgment from which Leonard could appeal, this court never had jurisdiction over his appeal (which is why we dismissed it) and therefore the jurisdiction of the trial court over the case never terminated.

## IV

### *Unjust Enrichment*

Leonard contends the unjust enrichment verdict was "legally incorrect" because the jury in the 2008 trial "simply had no evidence before it that [Luke] was unjustly enriched." Leonard asserts that "[t]he only evidence before the 2008 jury was that [he] disbursed funds from the LMMK Trust to the benefit of the beneficiaries of said trust (the grandchildren of . . . Luke). There was no evidence that [Leonard] utilized said funds for

10

his own benefit and/or kept/maintained said funds."  In offering these assertions, Leonard provides no citations to the record.

" 'It is well established that a reviewing court starts with the presumption that the record contains evidence to sustain every finding of fact.'  [Citations.]  Defendants' contention herein 'requires defendants to demonstrate that there is *no* substantial evidence to support the challenged findings.'  (Italics added.)  [Citations.]  A recitation of only defendants' evidence is not the 'demonstration' contemplated under the above rule.  [Citation.]  Accordingly, if, as defendants here contend, 'some particular issue of fact is not sustained, they are required to set forth in their brief *all* the material evidence on the point and *not merely their own evidence*.  Unless this is done the error is deemed to be waived.' "  (*Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881.)  To meet the burden of demonstrating the lack of substantial evidence, it is not enough for an appellant "to simply contend, 'without a statement or analysis of the evidence, . . . that the evidence is insufficient.'  [Citation.]  Rather, he must *affirmatively demonstrate* that the evidence is insufficient . . . ."  (*People v. Sanghera* (2006) 139 Cal.App.4th 1567, 1573.)  An appellant "does not show the evidence is insufficient by citing only his own evidence, or by arguing about what evidence is *not* in the record, or by portraying the evidence that is in the record in the light most favorable to himself."  (*Ibid.*)  Instead, an appellant "must present his case to us consistently with the substantial evidence standard of review.  That is, the defendant must set forth in his opening brief *all* of the material evidence on the disputed [findings] in the light most favorable to the [party that prevailed at trial], and then must persuade us that evidence cannot reasonably support the jury's verdict."  (*Id.* at p. 1574.)  If the appellant fails to do so, "then he cannot carry his burden of showing the evidence was insufficient because support for the jury's verdict may lie in the evidence he ignores."  (*Ibid.*)

The foregoing principles apply here.  In arguing that "[t]he only evidence before the 2008 jury was that [he] disbursed funds from the LMMK Trust to the benefit of the

11

beneficiaries of said trust (the grandchildren of . . . Luke)" and that "[t]here was no evidence that [Leonard] utilized said funds for his own benefit and/or that he kept/maintained said funds," without citing the record and without thoroughly discussing all of the material evidence on the issue of unjust enrichment, Leonard fails to carry his burden of *demonstrating* that the evidence was insufficient to support the jury's verdict. On this point, it is significant to note that the testimony to the jury in the 2008 trial spans more than 700 pages in the reporter's transcript. In the 15-page statement of facts in his opening brief, however, Leonard cites that portion of the record a mere *three* times. It is clear from this that Leonard has fallen far short of setting forth in his brief all of the material evidence on the issue of unjust enrichment. Accordingly, Leonard has forfeited his claim that the evidence was insufficient to sustain the jury's verdict.[5]

V

*Inconsistent Verdicts*

Leonard asserts in a heading that the jury verdicts in 2008 and 2010 were inconsistent with the 2008 finding of unjust enrichment. He follows this heading with a paragraph of legal citations on the subject of inconsistent verdicts. He then asserts as follows: "The 2008 jury found [Leonard] had not made a false promise. [Citation.] [¶] The 2010 jury found that there was no fraud or wrongful conduct. [Citation.]"

That is the *entirety* of Leonard's argument on that point, and as such it is patently insufficient. As we have noted already, it is the duty of appellant's counsel " 'by argument and the citation of authorities to show that [a] claimed error exists.' " (*Sprague v. Equifax, Inc.*, *supra*, 166 Cal.App.3d at p. 1050.) While elsewhere in his brief Leonard

---

**5**      This conclusion applies equally to Leonard's later assertion that "[i]t is impossible for [him] to be unjustly enriched at the expense of . . . Luke [for] using funds over which . . . Luke is only a co-trustee." Because Leonard has not fully developed the evidence that was produced in the 2008 trial, we have no substantial basis on which to evaluate this argument.

12

presents argument with no authority, here he presents authority with essentially no argument. The result is the same: Leonard has not carried his burden of affirmatively demonstrating error. The gist of Leonard's argument appears to be that the two juries could not consistently find that while Leonard did not make any false promise or a false representation to Luke, Leonard was nonetheless unjustly enriched at Luke's expense to the tune of over $200,000. Unfortunately for Leonard, he fails to develop this argument beyond the bare assertion of it, and thus it is forfeited.

VI

*Luke's Capacity*

Finally, Leonard complains that after the 2010 trial was complete, Luke admitted in a document filed with the court that in bringing his civil suit against Leonard, Luke was acting as a trustee of another trust (the Equestrian Trust). Leonard asserts that the result of the case would have been entirely different if this fact had been disclosed earlier. He claims that "this late disclosure must terminate these proceedings with prejudice in his favor based on the constitutionally-embedded presumption of openness in judicial proceedings."

Because Leonard fails to show that he raised this argument in the trial court, he cannot raise it for the first time in this court. (*In re Marriage of Eben-King & King*, *supra*, 80 Cal.App.4th at p. 117.) Additionally, Leonard utterly fails to explain how the single legal authority he cites -- *Doe v. Stegall* (5th Cir. 1981) 653 F.2d 180 -- justifies, let alone *compels*, the result he seeks. (Recall that he contends the case "must" be terminated.) So far as we can determine, the only relevance of the case Leonard cites is that it mentions "the presumption of openness of judicial proceedings." (*Id.* at p. 186.) Beyond that, the case does nothing for Leonard. Accordingly, his complaint about the late disclosure of the capacity in which Luke was acting goes nowhere.

With that, we have resolved all of the arguments in Leonard's brief that are sufficiently developed and supported by legal authority to be cognizable. Having

13

resolved all of those arguments in favor of Luke and Michael, the result that follows is necessarily affirmance.

DISPOSITION

The judgment is affirmed.  Luke and Michael shall recover their costs on appeal. (Cal. Rules of Court, rule 8.276(a).)


                                        _____ROBIE_____ , J.



We concur:



_____HULL_____ , Acting P. J.



_____HOCH_____ , J.