Filed 6/22/21 Conservatorship and Estate of Manuel CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| Conservatorship of the Person and Estate of SUSAN MANUEL. | B297334 |
| | (Los Angeles County Super. Ct. No. BP141252) |
| GREGORY (MANUEL) MANVELIAN, <br><br> Petitioner and Respondent, <br><br> JEFFREY SIEGEL, as Conservator, <br><br> Respondent, <br><br> v. <br><br> YANA MARIE MANVEL, <br><br> Objector and Appellant. | |

APPEALS from orders of the Superior Court of Los Angeles County. David J. Cowan, Judge. Affirmed.

Yana Manvel, in pro. per.; Schorr Law, Zachary D. Schorr, and Valerie H. Li for Objector and Appellant.

Klapach & Klapach and Joseph S. Klapach; Adam L. Streltzer for Petitioner and Respondent Gregory Manvelian.

Law Offices of Stewart J. Levin and Stewart J. Levin; Zarmi Law and David Zarmi for Respondent Jeffrey Siegel, as Conservator.

—————————————

## INTRODUCTION

Gregory Manvelian filed a petition for a conservatorship of his mother, Susan Manuel, which the probate court granted. Yana Manvel, Susan's daughter, appealed, and we affirmed. (See *Conservatorship of Manuel* (Feb. 14, 2017, B266834) [nonpub. opn.].)

Jeffrey Siegel, the court-appointed conservator, subsequently filed a petition on behalf of Susan against Yana to recover real property and other assets Yana arranged for Susan to transfer to her. On the third day of the trial on the conservator's petition, Siegel, Yana, and Gregory reached a settlement that resolved all claims in the conservatorship proceeding. Among other terms, the settlement required Yana to return certain property. Each of the three parties orally agreed to the terms of the settlement on the record and in open court. Siegel and Yana (but not Gregory) also submitted a stipulation and proposed order that resolved Siegel's petition against Yana by requiring Yana to return the property. The probate court signed and entered the order.

2

Four months later Gregory filed a motion to enforce the oral settlement agreement. Yana opposed the motion, arguing she agreed to the settlement because of extrinsic fraud and under duress. Yana also filed a motion to set aside the written stipulation and order resolving Siegel's petition against her. The probate court granted Gregory's motion to enforce the settlement and denied Yana's motion to vacate the written stipulation and order. Yana appeals from both orders. We conclude that we have jurisdiction to hear both appeals and that the probate court did not err in making either ruling. Therefore, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *The Probate Court Appoints a Conservator of Susan's Person and Estate*

As discussed in our prior opinion, Susan had two children, Yana and Gregory. At one time Susan owned substantial assets, but over time she transferred some of them (or rights to them) to Yana. In 2007 Susan's revocable trust was amended to name Yana as the sole beneficiary. Also in 2007 Susan transferred to Yana three parcels of real property, one of which was in Orange County and included an income-producing commercial mall (the Orange County property). In 2008 Susan transferred to Yana two condominium units in the Ocean Towers buildings in Santa Monica. And in 2013 Yana became the sole primary beneficiary of Susan's $1.4 million individual retirement account (IRA), which previously had designated Yana as a 50 percent beneficiary and Gregory as a 50 percent beneficiary. Meanwhile, although in 2012 the trust was amended to name Gregory as a 50 percent beneficiary, in March 2013 the trust was amended to

3

again name Yana as the sole beneficiary of the trust. (*Conservatorship of Manuel*, *supra*, B266834.)

Gregory filed a petition in 2013 to appoint a conservatorship of Susan's person and estate. In 2015 the probate court conducted a seven-day trial at which Susan, Yana, Gregory, Dr. Susan Bernatz, the court appointed expert, and several percipient witnesses testified. The court granted Gregory's petition and issued letters of conservatorship. In February 2017 this court affirmed the probate court's orders. (*Conservatorship of Manuel*, *supra*, B266834.)

B.  *The Conservator Files a Petition To Recover Assets from Yana, Which the Parties Settle During Trial*

In February 2017 Siegel filed a petition on behalf of Susan under Probate Code section 850 to compel Yana to transfer certain property back to Susan.[1] In particular, Siegel sought to recover the three parcels of real property and the two condominium units Susan had transferred to Yana in 2007 and 2008, as well as $720,000 Yana allegedly caused Susan to withdraw from her IRA and give to Yana. Siegel also asserted several causes of action, including for financial elder abuse, and claims for punitive damages and attorneys' fees. Siegel filed a separate petition for a substituted judgment modifying and reforming Susan's trust to provide that, upon Susan's death, Yana and Gregory would receive equal distributions from the trust estate.

The probate court held a three-day trial on the section 850 petition. The following witnesses testified: Yana; Richard Skolnick, an attorney who prepared Susan's amended trust and

---

[1]  Undesignated statutory references are to the Probate Code.

4

the deeds transferring the parcels of real property and condominium units from Susan to Yana; Vineendra Jain, a certified property manager and real estate broker who testified that the Orange County property generated over $1 million between 2012 and 2018; Dr. Bernatz, who testified that by 2012 Susan suffered from significant cognitive impairment and did not understand the nature and consequences of her transfers to Yana; and Dr. Robert Kahn-Rose, a geriatric psychiatrist who, in contrast to Dr. Bernatz, testified Susan had testamentary and contractual decisionmaking capacity as late as 2013, only minimal susceptibility to undue influence prior to 2008, and only mild to moderate susceptibility from 2012 to 2013.

On August 6, 2018, the third day of trial, Yana, Gregory, Siegel, and Susan (through her attorney) informed the court they had reached a settlement. Counsel for the parties recited the terms of the settlement on the record and in open court. The parties agreed that Siegel, as Susan's conservator, would obtain title to one of the condominium units in the Ocean Towers building and to the Orange County property and that Yana would retain title to the remaining properties. The parties agreed that Susan's estate would pay $190,000 for Gregory's attorneys' fees and costs and that Yana and Gregory would receive equal shares of the remainder of the trust estate upon Susan's death. The parties also agreed to release all claims against each other, including the conservator's claims to recover the money allegedly obtained by Yana from Susan's IRA.[2] After counsel stated the

---

[2] The settlement did not affect the conservator's right to seek expenses relating to management of the estate properties or Yana's right to seek reimbursement for expenses she incurred maintaining the Orange County property.

5

terms, the probate court asked Yana, Gregory, and Siegel, individually whether each of them understood the terms, had enough time to discuss the terms with their attorneys, and agreed to the terms. They all answered they did.

After Yana, Gregory, Siegel, and counsel for Susan stated their agreement to the settlement, Yana and Siegel (but not Gregory) submitted a signed written stipulation regarding the section 850 petition that contained only those settlement terms relevant to them—namely, that Siegel would release all claims against Yana and that Siegel, as Susan's conservator, would receive title to one of the condominium units and the Orange County property. The probate court signed and entered the written stipulation and order that day.

C.      *Gregory Seeks To Enforce the Oral Settlement Agreement, Yana Seeks To Vacate the Written One*

In December 2018 Gregory filed a motion under Code of Civil Procedure section 664.6 for an order to enter judgment enforcing the terms of the settlement the parties had orally agreed to in court on August 6, 2018. Yana opposed the motion, arguing that her attorneys had "work[ed] with opposing counsel to unduly pressure her to settle" and that she agreed to the settlement under duress. Yana claimed that at the trial her attorneys were unwilling to present evidence favorable to her case and that they told her the judge "hated her," thought she "was on the road to perjury," "would jail her," and would "fine her treble damages" if she did not settle. Yana also filed a motion to set aside the stipulation and order signed by the parties (other

6

than Gregory) and the probate court that resolved Siegel's section 850 petition.

In April 2019 the probate court denied Yana's motion to set aside the written stipulation and order and granted Gregory's motion for an order to enter judgment enforcing the March 6, 2018 oral settlement. The court found Yana presented insufficient evidence her attorneys were unprepared for trial, were "selling [her] out," or were in "cahoots" with the attorneys for Gregory or Siegel. Yana filed a timely notice of appeal from both the order granting Gregory's motion for entry of judgment and the order denying Yana's motion to set aside the stipulation and order.

## DISCUSSION

### A. *The Orders Are Appealable*

#### 1. *The Order Granting Gregory's Motion To Enforce the Stipulated Settlement Is Appealable*

We agree with the parties the order granting Gregory's motion to enforce the oral settlement agreement is appealable. "In all proceedings governed by" the Probate Code, "an appeal may be taken" from an order "[d]irecting or allowing payment of a . . . cost" or "authorizing, allowing, or directing payment of compensation or expenses of an attorney." (§ 1300, subds. (d) & (e).) The order granting Gregory's motion is both: It authorizes and approves payment from Susan's estate to Jackson Chen, Susan's attorney, of "$26,025.00, plus an additional $330.00 in reimbursement of costs," and it authorizes and approves payment from the estate to Gregory's attorneys of $190,000. In addition,

7

"[w]ith respect to a trust, the grant or denial" of "[a]ny final order" under section 17200 is appealable. (§ 1304, subd. (a).) The order granting Gregory's motion is a final order under section 17200 because it grants Siegel's petition for a substituted judgment modifying and reforming Susan's trust and it orders that Gregory and Yana will be equal beneficiaries of the trust estate upon Susan's death.

2.    *The Order Denying Yana's Motion To Set Aside the Stipulated Order Is Also Appealable, but It's a Little Messy*

The appealability of the probate court's order denying Yana's motion to set aside the stipulation and order resolving Siegel's section 850 petition is a closer question. Under section 1300, subdivision (k), "an appeal may be taken from" an order "[a]djudicating the merits of a claim made under" section 850. Siegel and Gregory contend that under subdivision (k), Yana could have appealed from the court's August 6, 2018 stipulation and order, but she cannot appeal from the court's April 2019 order denying her motion to set aside the prior order. According to Siegel and Gregory, who have moved to dismiss Yana's appeal, because the Probate Code does not include a provision that allows an appeal from an order denying a motion to vacate a prior order, the order denying Yana's motion to vacate is not appealable.

There is authority supporting Siegel and Gregory's position. "The right to appeal is wholly statutory." (*Dana Point Safe Harbor Collective v. Superior Court* (2010) 51 Cal.4th 1, 5; accord, *Levinson Arshonsky & Kurtz LLP v. Kim* (2019) 35 Cal.App.5th 896, 903; *In re Marriage of Garcia* (2017) 13 Cal.App.5th 1334, 1342.) "Unless an order is expressly made

8

appealable by a statute," we have "no jurisdiction to consider it." (*Levinson Arshonsky & Kurtz LLP*, at p. 903; see *Smith v. Smith* (2012) 208 Cal.App.4th 1074, 1083.)

The Code of Civil Procedure has a "'catch-all'" provision (*City and County of San Francisco v. Shers* (1995) 38 Cal.App.4th 1831, 1835) that allows a party to appeal from a postjudgment order, so long as "the issues raised by the appeal from the order [are] different from those arising from an appeal from the judgment" and the postjudgment order "'either affect[s] the judgment or relate[s] to it by enforcing it or staying its execution." (*Lakin v. Watkins Associated Industries* (1993) 6 Cal.4th 644, 651-652; see Code Civ. Proc., § 904.1, subd. (a)(2).) But "[i]t is well established that '[a]ppeals which may be taken from orders in probate proceedings are set forth in . . . the Probate Code, and its provisions are exclusive." (*Estate of Stoddart* (2004) 115 Cal.App.4th 1118, 1125-1126; see *Kalenian v. Insen* (2014) 225 Cal.App.4th 569, 575; *Estate of Downing* (1980) 106 Cal.App.3d 159, 163.) Therefore, Code of Civil Procedure section 904.1, subdivision (a)(2), does not apply to probate proceedings. And as Siegel and Gregory point out, the Probate Code does not contain a provision similar to Code of Civil Procedure section 904.1, subdivision (a)(2), that authorizes an appeal from postjudgment orders in probate proceedings. Therefore, an order denying a motion to vacate a judgment or prior order in a probate proceeding is generally not appealable. (See *Conservatorship of Harvey* (1970) 3 Cal.3d 646, 652; *Estate of Duke* (1953) 41 Cal.2d 509, 515-516; *Estate of Martin* (1999) 72 Cal.App.4th 1438, 1442; cf. *Estate of Stoddart*, at pp. 1123, 1126 [order denying an alleged heir's motion for reconsideration

of an order denying her petition to obtain portion of trust and estate proceeds was not appealable].)

Nevertheless, in *Estate of Baker* (1915) 170 Cal. 578 (*Baker*) the California Supreme Court recognized an exception to this general rule, holding that an "appeal is permitted from an order refusing to vacate a judgment or decree when, for reasons involving no fault of the appealing party, he has never been given an opportunity to appeal directly from the judgment or decree." (*Id.* at p. 582.)  In *Baker* a sister contested her deceased brother's will, but died while her action was pending.  (*Id.* at p. 581.)  After the trial court dismissed the action and entered judgment, the administrator of the sister's estate moved to vacate the judgment and substitute himself as a party, which the trial court denied. (*Ibid.*)  The Supreme Court held that, because the administrator was not a party to the action and therefore could not have appealed from the order of dismissal, he could appeal from the postjudgment order denying his motion to vacate the judgment. (*Id.* at p. 584; see *Estate of Cahoon* (1980) 101 Cal.App.3d 434, 438 ["'The general rule allowing appeals from orders granting or denying . . . motions to vacate . . . does not apply in probate,'" but "'an exception is recognized where the motion to vacate is the only way in which an aggrieved party can protect his rights; denial of the motion in such a case is appealable.'"].)

On the other hand, the Supreme Court has declined to extend *Baker* to allow a party to appeal from an order denying a motion to vacate an order under Code of Civil Procedure section 473.  In *Estate of Allen* (1917) 175 Cal. 356 (*Allen*) the widow of the decedent failed to timely secure a bill of exceptions and moved for relief under section 473 of the Code of Civil Procedure on the ground of excusable neglect.  The trial court denied the

10

motion. (*Allen,* at pp. 356-357.) The Supreme Court held the order denying the motion under Code of Civil Procedure section 473 was not appealable, even though the basis of the widow's motion was excusable neglect, because the Probate Code did not contain any provision permitting such an appeal. (*Allen,* at p. 357.)

Similarly, in *Estate of O'Dea* (1940) 15 Cal.2d 637 (*O'Dea*) two claimants filed a motion for relief under Code of Civil Procedure section 473 (although it is not clear on what ground they moved) after the probate court dismissed them from a proceeding to determine the heirs of a decedent, and the trial court denied the motion for relief. (*O'Dea,* at p. 638.) Again holding that the order denying the motion for relief was not appealable, the California Supreme Court stated "the peculiar and unusual situation arising out of the facts in [*Baker*] does not lay down any general exception to the rule that appeals in probate matters must be limited to those orders and judgments specified" and that the "facts in the instant case have no similarity to those in" *Baker.* (*O'Dea,* at p. 639.)

This case falls between *Allen* and *O'Dea*, on the one hand, and *Baker*, on the other. Like the appellants in *Allen* and *O'Dea*, and unlike the appellant in *Baker*, Yana was a party to the proceeding when the court entered the stipulation and order. And unlike the appellant in *Baker*, Yana received notice of the order she later sought to set aside. (Cf. *Kalenian v. Insen*, *supra*, 225 Cal.App.4th at p. 575 [children of a trustor could appeal the trial court's order denying their motion to vacate an order dismissing their petition where they did not receive notice of the trial court's dismissal order and therefore "could not avail themselves of the right to appeal"].)

11

But like the appellant in *Baker*, and "for reasons involving no fault" on her part, Yana "has never been given an opportunity to appeal directly from" the stipulation and order on the grounds she argues the court should set aside the stipulated order. (*Baker*, *supra*, 170 Cal. at p. 582.)  Contrary to Siegel and Gregory's argument, Yana could not have appealed (or at least meaningfully appealed) from the stipulation and order on the ground of extrinsic fraud or duress.  She claims she was under duress—i.e., that she was compelled to act against her will (see *In re Marriage of Balcof* (2006) 141 Cal.App.4th 1509, 1523)— when she agreed to, and the probate court signed, the stipulation and order.  And even if, after the probate court entered the order, Yana overcame the effects of the claimed duress, she could not have challenged the order on either extrinsic fraud or duress because the facts she needed to support her challenge were not in the record.  The only way for Yana to present her arguments based on extrinsic fraud and duress was to file the post-order motion she filed to set aside the stipulated order and present her evidence.

In the end, this case is closer to *Baker* than *Allen* and *O'Dea*.  Like the appellant in *Baker*, Yana asked the court to use its equitable authority to set aside an order that deprived her of a fair adversary proceeding.  Yana claims she stipulated to the order under duress and without knowing "her trial attorneys . . . worked with opposing counsel and sold out her interest to the opposing parties to pressure her into [the] settlement . . . ."  And as was true for the appellant in *Baker*, Yana, through no fault on her part, could not have meaningfully appealed from the stipulated order.  She could not have argued the evidence of the alleged extrinsic fraud and duress warranted vacating the order

12

until she filed a motion to set aside the order. Therefore, under *Baker*, which the Supreme Court has never overruled and thus is still binding, the order denying Yana's motion to vacate the stipulated order is appealable.

> ### B. *The Probate Court Did Not Err in Refusing To Set Aside the Stipulated Order*

#### 1. *Applicable Law and Standard of Review*

A "'party may obtain relief from an erroneous judgment,'" including a stipulated judgment, "'by establishing that it was entered through extrinsic fraud or mistake.'" (*Warga v. Cooper* (1996) 44 Cal.App.4th 371, 376; see *In re Marriage of Grissom* (1994) 30 Cal.App.4th 40, 46.) A party may also move to vacate a stipulated judgment on the ground that the stipulation was entered as a result of duress. (See *In re Marriage of Baltins* (1989) 212 Cal.App.3d 66, 83 ["Duress has . . . been recognized as a ground justifying relief from a final judgment."]; see also *Leeper v. Beltrami* (1959) 53 Cal.2d 195, 205 [because the plaintiffs "pleaded duress against" the defendants, "any consent judgment or judgment of dismissal that may have been entered pursuant to a settlement agreement would not act as a bar to the present action"].) "'[T]he party seeking equitable relief on the grounds of extrinsic fraud'" or duress "'must show three elements: (1) a meritorious defense; (2) a satisfactory excuse for not presenting a defense in the first place; and (3) diligence in seeking to set aside the [order] once discovered.'" (*Pittman v. Beck Park Apartments Ltd.* (2018) 20 Cal.App.5th 1009, 1025; see *Warga*, at p. 376.)

A motion to set aside a stipulated order for extrinsic fraud or duress "is addressed to the sound discretion of the trial court, and, in the absence of a clear showing of abuse of discretion, the

13

order will not be disturbed on appeal." (*In re Marriage of Grissom, supra,* 30 Cal.App.4th at p. 46; accord, *In re Marriage of Eben-King & King* (2000) 80 Cal.App.4th 92, 118; see *Richardson v. Franc* (2015) 233 Cal.App.4th 744, 751 ["After the trial court has exercised its equitable powers, the appellate court reviews the judgment under the abuse of discretion standard."].) We review "the [probate] court's findings of fact pertaining to the existence of extrinsic fraud [or duress] . . . for substantial evidence." (*Kramer v. Traditional Escrow* (2020) 56 Cal.App.5th 13, 28.) But the "burden is on the complaining party to establish abuse of discretion, and the showing on appeal is insufficient if it presents a state of facts which simply affords an opportunity for a difference of opinion." (*Marriage of Eben-King & King*, at p. 118; see *Richardson*, at p. 751 ["Under [the abuse of discretion] standard, we resolve all evidentiary conflicts in favor of the judgment and determine whether the trial court's decision falls within the permissible range of options set by the legal criteria." (Internal quotation marks omitted.)].)

> 2. *Extrinsic Fraud*

"[E]xtrinsic fraud" occurs where "a party has been denied by his opponent or otherwise an opportunity to be heard or to fully present a claim or defense" and "usually arises when a party is denied a fair adversary hearing because he has been deliberately kept in ignorance of the action or proceeding, or in some other way fraudulently prevented from presenting his claim or defense." (*F.E.V. v. City of Anaheim* (2017) 15 Cal.App.5th 462, 472, internal quotation marks omitted; see *Kulchar v. Kulchar* (1969) 1 Cal.3d 467, 471; *Luxury Asset Lending, LLC v. Philadelphia Television Network, Inc.* (2020) 56 Cal.App.5th 894, 910-911.) And a party may show extrinsic fraud where """the

14

attorney regularly employed"''" by the moving party "''"corruptly sells out his client's interest to the other side . . . ."''" (*Warga v. Cooper, supra,* 44 Cal.App.4th at pp. 376-377.)

Yana asserts her attorneys must have sold out her interests because, according to her, (1) her attorneys performed poorly and were unprepared at trial; (2) her attorneys forced her to settle by telling her the judge hated her, thought she was lying, and was going to fine her and send her to jail; and (3) the settlement terms were one-sided. The probate court, however, did not abuse its discretion in ruling Yana failed to show extrinsic fraud. Most significantly, the probate court did not find credible Yana's description of her attorneys' purported efforts to coerce her to settle, finding it "exaggerated." "[S]o long as it has 'reasonable' grounds to do so," a factfinder "may reject even uncontradicted testimony by a witness it does not find credible." (*Moran v. Foster Wheeler Energy Corp.* (2016) 246 Cal.App.4th 500, 518; see *Beck Development Co. v. Southern Pacific Transportation Co.* (1996) 44 Cal.App.4th 1160, 1204.) "'Consequently, the testimony of a witness which has been rejected by the trier of fact cannot be credited on appeal unless, in view of the whole record, it is clear, positive, and of such a nature that it cannot rationally be disbelieved.'" (*In re Marriage of Grimes & Mou* (2020) 45 Cal.App.5th 406, 422; accord, *DiPirro v. Bondo Corp.* (2007) 153 Cal.App.4th 150, 196; see *Estate of Sapp* (2019) 36 Cal.App.5th 86, 106 ["the probate court, as the trier of fact, was entitled to determine how much credence and weight the testimony deserved" and was "'the sole judge of the credibility of witnesses'"].)

The probate court had numerous rational and reasonable grounds to disbelieve Yana's description of her attorneys'

15

allegedly coercive statements. For example, Yana was not a disinterested witness; she was the party seeking to avoid the settlement terms, and she relied largely on her uncorroborated declaration. (See *Jennifer K. v. Shane K.* (2020) 47 Cal.App.5th 558, 579 [""[i]n passing on the credibility of witnesses and the weight to be given their testimony, the trier of fact is entitled to consider their interest in the result of the case, [and] their motives""]; *South Bay Transportation Co. v. Gordon Sand Co.* (1988) 206 Cal.App.3d 650, 657 [while "[u]ncontradicted testimony should not be arbitrarily rejected by the fact finder, . . . it may be self-impeaching and warrant disbelief for a number of reasons, such as . . . obvious bias"].) In addition, the court stated it had participated in settlement discussions with Yana's attorneys and never observed any conduct suggesting they were either "selling" Yana out or "forcing" her to settle. (See *A.G. v. C.S.* (2016) 246 Cal.App.4th 1269, 1287 [trial court was "entitled to rely" on its observations of a party's conduct during trial when making findings]; *Hirshfield v. Schwartz* (2001) 91 Cal.App.4th 749, 762 [trial court's "observations are evidence which may be used alone or with other evidence to support its findings"].) The court's credibility findings were also supported by the declaration of Adam Streltzer, Gregory's attorney, who stated that Yana "was an active participant" in settlement discussions and "successfully asserted key negotiating points in her favor"—namely, the provision allowing her to retain the right to seek reimbursement from Susan for money Yana paid to maintain the Orange County property. And the probate court observed that Yana had replaced multiple, "well-qualified" lawyers.

Moreover, there were a number of rational and reasonable explanations for the conduct of Yana's attorneys other than

corruption and duplicity.  For example, her attorneys may have reasonably believed that Yana did not have a strong defense, that the trial was not going well for her, and that it was not in her interest to proceed and risk greater liability.  (See *In re Marriage of Eben-King & King*, *supra*, 80 Cal.App.4th at p. 118 [a showing of extrinsic fraud on appeal "is insufficient if it presents a state of facts which simply affords an opportunity for a difference of opinion"].)  Yana complains her attorneys did not call several witnesses that would have been "key to corroborating [Yana's] testimony at trial" and did not submit documents and video recordings that "supported [her] claims . . . ."  But Yana does not provide any further detail in her opening brief about how these purported witnesses or exhibits would have advanced her defense to the petition, nor does she explain why her attorneys' tactical decision not to call certain witnesses or submit evidence showed they had sold out her interests to Siegel and Gregory.

Finally, as the probate court correctly determined, the settlement terms were not one-sided.  In his section 850 petition, Siegel sought to recover both condominium units and all three parcels of property Susan had transferred to Yana; the $720,000 Susan withdrew from her IRA that Yana allegedly received; damages equal to twice the value of the transferred property pursuant to section 859;[3] punitive damages; and attorneys' fees.

---

[3]     Section 859 provides that, "[i]f a court finds that a person has in bad faith wrongfully taken, . . . property belonging to a conservatee," or "an elder," or has taken "the property by the use of undue influence in bad faith or through the commission of elder or dependent adult financial abuse, as defined in Section 15610.30 of the Welfare and Institutions Code, the person shall be liable for twice the value of the property recovered . . . ."

17

Under the settlement, Yana lost only a fraction of what Siegel sought; she only had to return one of the two condominium units and one of the three parcels of property. She did not have to give back any of the money she received from Yana's IRA and she escaped liability for any further damages. Not a bad settlement for Yana, especially considering the probate court, in its order appointing a conservator, had already found Yana unduly influenced Susan—a finding we held in the prior appeal was supported by substantial evidence. (See *Conservatorship of Manuel*, *supra*, B266834.)[4]

### 3. *Duress*

"""[D]uress, which includes whatever destroys one's free agency and constrains [her] to do what is against [her] will, may be exercised by threats, importunity or any species of mental coercion [citation] . . . ."' [Citation.] It is shown where a party "intentionally used threats or pressure to induce action or nonaction to the other party's detriment.""" (*In re Marriage of Balcof*, *supra*, 141 Cal.App.4th at p. 1523; see *Tarpy v. County of San Diego* (2003) 110 Cal.App.4th 267, 276 ["Duress generally exists whenever one is induced by the unlawful act of another to

---

[4] Yana complains the settlement was unfair because it provided that Gregory would receive $190,000 in attorneys' fees from the trust, even though he was not a party to the section 850 petition. But Gregory agreed to release all claims he had in the conservatorship proceedings (and any other potential claims against Yana) as a condition of the settlement. Again, not a bad deal for Yana.

make a contract or perform some other act under circumstances that deprive him of the exercise of free will."].)

Yana contends her attorneys exercised duress by making the statements to pressure her to settle; she does not contend Siegel or Gregory exercised any duress. Even assuming a party can set aside a settlement agreement as a result of duress exercised by the party's attorney,[5] as discussed the probate court did not abuse its discretion in finding Yana's description of her attorneys' statements was not credible. Moreover, even if the probate court had credited some of Yana's testimony, it would have been reasonable for the court to infer the statements by Yana's attorneys were not sufficiently coercive to cause duress (with the possible exception of the alleged statement that the judge would send Yana to jail if she did not agree to a settlement—an allegation that seems particularly farfetched). As discussed, the party exercising the alleged duress generally must perform an unlawful or wrongful act. (*Tarpy v. County of San Diego, supra*, 110 Cal.App.4th at p. 276; see *Hester v. Public Storage* (2020) 49 Cal.App.5th 668, 679 ["[e]conomic duress requires an unlawful or 'wrongful act,'" such as the "'the assertion of a claim known to be false or a bad faith threat to breach a contract or to withhold a payment'"].) There is nothing unlawful or wrongful about an attorney giving his or her honest, negative

---

[5]     Generally, if a party enters a settlement agreement under duress, the party may only rescind the contract if the duress was "'exercised by or with the connivance of the party as to whom he rescinds.'" (*Chan v. Lund* (2010) 188 Cal.App.4th 1159, 1174; see Civ. Code, § 1689, subd. (b)(1); *Leeper v. Beltrami, supra*, 53 Cal.2d at p. 206 [duress "renders a transaction voidable by a party induced thereby to enter into it if the other party thereto . . . has reason to know" of the duress].)

impressions of a case to the client, including that a court may award all or most of the damages sought against the client (including treble damages, which Siegel sought in his petition), that the court does not appear to believe the client's testimony is truthful, or even that the judge does not appear to like the client.

C. *The Probate Court Did Not Err in Granting Gregory's Motion To Enforce the Settlement*

In ruling on a motion to enter judgment pursuant to a settlement agreement "'the trial court acts as the trier of fact, determining whether the parties entered into a valid and binding settlement.'" (*Osumi v. Sutton* (2007) 151 Cal.App.4th 1355, 1360; see *Terry v. Conlan* (2005) 131 Cal.App.4th 1445, 1454; *Kohn v. Jaymar-Ruby, Inc.* (1994) 23 Cal.App.4th 1530, 1533.) Generally, "[t]he standard of review on appeal is whether substantial evidence exists to support the trial court's ruling." (*Terry*, at p. 1454; see *Machado v. Myers* (2019) 39 Cal.App.5th 779, 790; *Williams v. Saunders* (1997) 55 Cal.App.4th 1158, 1162; *Kohn*, at p. 1533.)

Yana does not dispute that the terms described in the order granting Gregory's motion to enforce the settlement accurately reflect the terms she orally agreed to in court. Yana's only argument is that she agreed to those terms under duress and as a result of extrinsic fraud, the same grounds on which she moved to set aside the stipulated order. As discussed, the probate court did not err in declining to find that Yana entered the agreement under duress or as a result of extrinsic fraud, and therefore granting the motion to enforce the settlement.

20

## DISPOSITION

The orders are affirmed.  Siegel and Gregory are to recover their costs on appeal.


SEGAL, J.


We concur:


PERLUSS, P. J.


FEUER, J.